HEINRICH SIEKER, APPELLANT, V. AUGUST SIEKER, ADMIN-
ISTRATOR, ET AL., APPELLEES.

FILED APRIL 24, 1911.  No. 16,392.

Vendor and Purchaser: CONTRACT: RESCISSION.  Where parties have entered into a contract for the purchase and sale of real estate, they may afterwards by the destruction of the written paper evidencing the same, under an oral agreement that the contract shall be rescinded and thereafter held for naught, effectually do away with the previous agreement.

APPEAL from the district court for York county: GEORGE F. CORCORAN, JUDGE.  *Affirmed.*

*France & France,* for appellant.

*C. F. Stroman* and *Power & Meeker, contra.*

LETTON, J.

This is an action for the specific performance of a written contract for the sale of real estate. The plaintiff, Heinrich Sieker, is the son of Karl Sieker, now deceased, and of Wilhelmina Sieker, who is the principal defendant. The full execution of the contract is denied, but we are satisfied that the evidence establishes the fact that in May, 1907, Karl Sieker and his wife, Wilhelmina, entered into a written contract, which was made out in duplicate and duly executed and acknowledged, for the sale to plaintiff of 80 acres of land which was occupied by them as their homestead. Karl Sieker died in December, 1907, leaving a will whereby he devised the land to his wife. After the father's death the duplicate contracts were destroyed. Plaintiff alleges that his mother · and his brothers, August and Louis Sieker, fraudulently, against his will, and without his consent, obtained from him his copy of the agreement and wrongfully destroyed the same; while the defendants contend that both copies of the contract were destroyed with his knowledge and consent, and with the full intention on the part of plaintiff and of all the parties interested that the sale should not be consummated, but that the contract should be rescinded and revoked, all the rights of plaintiff thereunder abandoned, and the money which had been paid by him on the contract returned to him. This is one of the not uncommon cases of family differences and disputes arising over the disposition of property, which are ordinarily productive of more bitterness and hard feeling than any other class of cases. The older members of the Sieker family seem to side with the plaintiff; while the younger members take the part of the mother. Since we believe the contract was valid, the only question left is whether it was voluntarily and by mutual consent rescinded and abandoned.

The testimony of plaintiff is that in June, 1908, while he was still living at the family home, his mother, acting

on her own suggestion, procured his duplicate copy of the contract and burned it in his presence, but without his consent.

His mother's testimony, which was taken with the aid of an interpreter, is in substance that the sale of the 80 acres was made by the parents to Heinrich for the purpose of procuring money with which to buy a larger tract of land; that through an unforseen contingency the purchase of the other tract fell through, the family were unable to obtain possession, and were liable to be without a home; that after the father's death she and Heinrich had a conversation, and Heinrich told her that father had died and she could have the land back, that he did not want to keep it, to which she assented; that a day or two after this, in the presence of her sons, August and Louis, and her daughter, Wilhelmina, she asked Heinrich what to do with the contracts; that he said they could burn them up; that he then went into his room and brought his copy, and she got hers. She was sitting by the stove; he gave her his copy, and she then, with his knowledge and consent, put both copies in the stove and burned them up. She also testifies that, in repayment of the $500 which had been paid by Heinrich on the contract, she paid him $150 in May, 1908, which he wanted for the purpose of buying a horse, and in September of the same year she paid the remaining $350. Heinrich admits the payment of the $350, but explains it by saying that $200 of it was for rent, and $150 for borrowed money, and he denies receiving the $150 which she testifies was paid him in May. The testimony of the mother as to the conversation attending the destruction of the contract is directly corroborated by that of August, Louis, and Wilhelmina, who were present at the time. There is other testimony as to collateral matters tending to throw some light on the issue, but this is also in conflict and requires no discussion. The district court found generally for the defendants, and plaintiff appeals.

While we agree with the plaintiff that the simple burn-

ing up of a contract whereby an interest in real estate has passed to another does not in any way rescind the contract, we are convinced that there is something more in this case than the mere destruction of the papers. We are satisfied from the evidence that it was the intention of plaintiff at the time he procured his copy of the contract, delivered it to his mother, and consented to its destruction, to rescind and abandon the contract and allow his mother to retain her home, and that his purpose to do so was as certainly evidenced by the surrender and destruction of the paper as it would have been had he executed a written release or revocation. We think it is now settled law that, where parties have entered into a contract for the purchase and sale of real estate, they may afterwards by the destruction of the written paper evidencing the same, under an oral agreement that the contract shall be rescinded and thereafter held for naught, effectually do away with the previous agreement. The destruction of the written contract with the intention of revesting the title in the original owner will be held in equity to have as much effect as a written conveyance. *Spier v. Schappel,* 86 Neb. 335; *Ottow v. Friese,* 126 N. W. (N. Dak.) 503; *Mahon v. Leech,* 11 N. Dak. 181; *Lowther Oil Co. v. Miller-Sibley Oil Co.,* 53 W. Va. 501, 97 Am. St. Rep. 1027; 2 Warvelle, Vendors (2d ed.) sec. 826.

The witnesses are for the most part of German parentage, with but a superficial knowledge of the English language. The plaintiff is handicapped by this, and also apparently by a lack of knowledge of ordinary business affairs. The district court had all the parties before it, and, no doubt, was better able to determine the truth or falsity of their testimony than we are. From the record before us, we feel satisfied that the conclusion of the district court was correct. Its judgment is therefore

AFFIRMED.