## McKinney, et al. v. Flanery.

(Decided November 28, 1924.)

### Appeal from Estill Circuit Court.

1. Frauds, Statute of—Abandonment, Dissolution, or Rescission of Contract Need Not be Evidenced by Writing.—Under statute of frauds, abandonment, dissolution, or rescission of contract for sale of realty is not required to be evidenced by writing.

2. Frauds, Statute of—Contract May be Rescinded by Parol Before Rights of Third Parties have Intervened.—Written contract for sale of realty may be rescinded by parol before rights of third parties have intervened.

3. Vendor and Purchaser—Evidence Held to Establish Parol Cancellation of Contract.—Evidence held to establish parol cancellation of contract for purchase of realty.

ROBT. R. FRIEND and R. W. SMITH for appellants

RIDDELL & SHUMATE and KELLY KASH for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

Appellee was adjudged to be the owner of 40 acres of land known as Rocky hollow, lying on Ross creek in Estill county.

Joseph Angel was the owner of a tract of 150 acres of land on Ross creek, which he had sold by parol to his grandson, Robert McKinney. This was in 1908. In 1911, Robert McKinney sold 40 acres of this to S. H. Flanery, and a writing evidencing the trade was prepared. A month or two later, appellee found that he was unable to pay Angel for the land as contemplated by this agreement, and it is insisted for appellant that by mutual consent the contract for the sale of this land was surrendered, and destroyed in the presence of several witnesses, and after the trade had been annulled, Flanery moved from that part of the county and has not lived in the vicinity of the land since. McKinney at that time lived on the 150-acre tract and continued to do so. In 1912, Joseph Angel conveyed this 150 acres to McKinney.

In the spring of 1918, the oil development reached Ross creek. McKinney leased the land for oil to Seiderman, and shortly thereafter Flanery set up his claim to this land and began this suit in order to establish it. In this suit he filed a writing which he claims was the origi-

nal written contract given him by McKinney. If the writing filed by appellee is genuine and is the contract signed by appellant, then this appeal is without merit; but if the contract between these parties was destroyed and the trade cancelled, this case should be reversed.

McKinney testified that the only writing made between the parties was written on tablet paper with a lead pencil, and signed in the woods at the time the parties made the agreement, and while they were upon the land. This method of executing the contract and the material employed are in harmony with the humble circumstances of the parties, all of whom are uneducated persons.

The paper filed by Flanery and which he alleges is the original contract has the name of McKinney signed to it by his mark, whereas, McKinney testifies that when he contracted to sell this land to Flanery, he signed the contract himself. McKinney testified that he is able to write, and two or more of his signatures appear in the record. The paper filed as the basis of appellee's claim is of a good grade of legal cap of the printed and numbered line variety, such a sheet of paper as is not usually found except in the larger stores and in well equipped offices. The alleged contract is written in ink, and there are two different shades of ink used. The body of the document and the name of McKinney are in the handwriting of appellee, and are written in ink of one shade, while the signatures of Fred F. Flanery and Stratn Angel, the witnesses, are in ink of quite a different shade; yet the appellee and the witness Fred F. Flanery both testify that the entire document, signatures and all, was written with the same pen and ink, and all within a very few minutes.

However, the difference in the ink is so striking that it is very improbable, if indeed it is not impossible, that this was so written. Stratn Angel says he signed this paper at the home of his father, Joseph Angel, while Fred F. Flanery and the appellee claim that all signed the paper in the woods above appellant's house.

Stratn Angel is a son of Joseph Angel, and an uncle of the appellant. The evidence discloses that he is hostile to his nephew, and it was testified by the witness Plowman that Stratn Angel said that he would cause McKinney to lose the place if in any way he could. Plowman stated further that Stratn Angel, in that same con-

versation, said that he (Stratn) ought to have had that place.

Appellee's evidence does not impress us. Three different witnesses testify that he told them he had given up the place. Appellant and three disinterested witnesses testified that the contract for the purchase of this land was surrendered by appellee in their presence, and its destruction was proved. The acts and conduct of the two men since that time support the contention of appellant that the original paper was destroyed, and refute the statement of appellee that it was not destroyed.

Let us examine the conduct of the appellee, bearing in mind that he claims now to be the holder of a bond for a tract of land. He began a clearing for a house seat, immediately after he purchased, but the clearing was never completed; he got out corner stones for a house, but the house was never built; which is just what he would have done if the trade had been cancelled. He did not list the property a single year for taxation, and this is just what he would have done if the trade had been annulled. He moved out of that neighborhood to another part of the county, and at a later date, a number of miles farther away. He never tendered any payment until the land became valuable for oil, and that was in February, 1918, at the office of Attorney Smith, and just before this suit was filed. He never cut the timber of value off this land at any time. All these things are just what he would have done, if, as the appellant and his witnesses claim, the trade was cancelled by mutual consent. These are not the acts of a man who has "bought a piece of ground," but of one who has "abandoned the difficulty," which he made no pretense of having a right to renew until the prospects of oil made the property valuable.

On the other hand, what was the conduct of the appellant? Since January, 1911, he continued to live on the large boundary of which this 40 acres is a part, and to list the land in controversy for taxation on the proper records and pay the taxes; he cut from the land evidently all the merchantable timber for ties, several hundred in number. These ties were taken from the land during the two years next following the trade with Flanery, and while Flanery still lived in the neighborhood. The ties were cut by John Estes, partly hauled by him, they were taken up by the witness Dave Reece, and sold to the witness Durbin, and there can be no question of the tie trans-

action, because there are witnesses covering the making, inspection, hauling and purchase thereof, and in addition to the ties, the appellant cut wall plates from the larger timber on the tract in controversy.

Not only do the acts and conduct of these parties indicate that this contract was cancelled, but McKinney testifies that it was cancelled about five or six weeks after it was made. He tells where this took place and shows by three disinterested witnesses that they were present at the time, and heard the appellee say that he was going to give up the land, and saw the contract surrendered, and destroyed.

Appellee insists that this contract could not be cancelled except in writing, and relies upon the statute of frauds. By that statute, a contract for the sale of real estate is required to be in writing, but the statute says nothing about the abandonment, dissolution or rescission of a contract for the sale of real estate. They are not required to be in writing. The statute is not concerned with the contract after it has been made, and to require an abandonment of it to be in writing would be to add to the statute a provision which it does not now contain; the contract which must be in writing is the contract for the sale. When that is put in writing, and signed by the seller, the statute is satisfied. A dissolution or rescission of the contract comes after this. It is no part of the original, nor does it add a new term to it. It is something done by the parties by reason of which the former contract has ceased to be enforceable as a contract, and it does not in any way come within the statute. See note to case of Flinner v. McVay, 19 L. R. A. (N. S.) 879, also 27 R. C. L. 639.

A written contract for the sale of real estate, where rights of third parties have not intervened, may be rescinded by parol.

Asher v. Helton, 31 Ky. L. R. 9, 101 S. W. 350; Davis v. Benedict, 9 Ky. L. R. 200, 4 S. W. 339; Lewis v. Cooley, 81 S. C. 461, 62 S. E. 868; Sieker v. Sieker, 89 Neb. 123, 130 N. W. 1033; Marsh v. Despard, 56 W. Va. 132, 49 S. E. 24; Mahon v. Leech, 11 N. D. 181, 90 N. W. 807.

The appellee was to pay $100.00 for this property. He doesn't claim to have paid anything except $1.00. He claims to have paid that by delivering to McKinney some wire. McKinney denies that he paid anything, and we cannot believe appellee would have waited, without saying anything, for seven years, during which time Mc-

Kinney paid taxes on the land, cut timber from it, and exercised other rights over it, if he had felt that he had any contract for its purchase.

The judgment is reversed, and the cause remanded for further proceedings consistent with this opinion.