OCTOBER 6, 2017; 10:00 A.M. Discretionary Review Denied by Supreme Court February 7, 2018
BRIEFS FOR APPELLANTS BRETT KINCAID, KEVIN KINCAID, AND CIERRA KINCAID: Elizabeth R. Seif, Lexington, Kentucky.
BRIEFS FOR APPELANT J. ROSS STINETORF, AS GUARDIAN AD LITEM FOR THE MINOR AND UNBORN BENEFICIARIES: J. Ross Stinetorf, Lexington, Kentucky.
BRIEFS FOR APPELLEE JOHNSON, TRUE & GUARNIERI, LLP: E. Kenly Ames, Bowling Green, Kentucky.
BRIEFS FOR APPELLEES JOAN D. KINCAID, EXECUTRIX OF THE ESTATE OF JANE KINCAID, ET AL.: C. Timothy Cone, Paul E. Sullivan, Barry D. Hunter, Lexington, Kentucky.
BEFORE: ACREE, JONES, AND THOMPSON, JUDGES.
OPINION
JONES, JUDGE:
*906 This appeal concerns the amount of attorney fees awarded to Appellees/Cross-Appellants, Johnson, True, & Guarnieri, LLP, and the manner in which those fees were calculated. Appellants/Cross-Appellees, which include the beneficiaries and administrators of the trust fund at the heart of this dispute, have previously appealed the amount of fees awarded to Johnson, True, & Guarnieri, LLP, to this Court, which vacated the award and remanded to Fayette Circuit Court. Following remand, all parties involved appealed to this Court alleging numerous assignments of error. After review of the record and applicable legal authorities, we affirm the Fayette Circuit Court.
I. BACKGROUND
Garvice D. Kincaid passed away in 1975, leaving a substantial estate comprised largely of various business interests (the "Estate"). Garvice was survived by his wife, Nelle W. Kincaid; his twin daughters, Joan and Jane Kincaid (the "Kincaid Daughters"); and his grandsons, Brett and Kevin Kincaid (the "Kincaid Brothers"). Most of the Estate was placed in a trust, which was divided into two shares-a "marital share," comprised of Funds A and B, and a "non-marital share," comprised of Fund C. Pursuant to the terms of Garvice's Will and Trust Agreement, an advisory committee (the "Advisory Committee") was created to instruct Central Bank & Trust in its role as trustee of the trust.
Upon Nelle's passing in 1984, the Kincaid Daughters became the sole beneficiaries of Funds A and B. The Kincaid Daughters, the Kincaid Brothers, and the issue of the Kincaid Brothers are the beneficiaries of Fund C. In 1985, the Kincaid Daughters brought suit against the Advisory Committee. This suit was settled in 1993, and, pursuant to the terms of that settlement agreement, the original members of the Advisory Committee resigned and were replaced by the Kincaid Daughters and Michael Foley, a certified public accountant.
In December of 2005, the Advisory Committee and the Kincaid Daughters, individually, filed a motion in Fayette Circuit Court for approval of a proposed final allocation and distribution of trust assets among Funds A, B, and C. The Kincaid Brothers hired the law firm of Johnson, True and Guarnieri, LLP ("JTG"), which had represented them in previous ligation concerning Fund C, to oppose the proposed reallocation plan. In its previous representation of the Kincaid Brothers, JTG had billed them on an hourly basis and had received those amounts either from Fund C or directly from the Kincaid Brothers. In this representation, JTG continued to bill the Kincaid Brothers on an hourly basis, for each hour of service provided from January 2006 to June 2007.
In December of 2007, the parties reached a settlement agreement (the "Settlement") concerning the reallocation plan. Pursuant to the Settlement, $113 million of the $195 million in Fund C at that time would be transferred to Funds A and B. This resulted in Fund C retaining approximately $30 million more in assets than it would have retained under the reallocation plan originally proposed by the Advisory Committee. According to JTG's calculations, the Settlement "enhanced" Fund C from the original proposal by $30,140,748.00, $2 million of which was to be used to pay final administration expenses of the Estate. Additionally, the Settlement guaranteed the Kincaid Brothers cash distributions of $8 million total, to be distributed over the next four years. The *907 Settlement contained the following provision concerning attorney fees:
15. The attorneys representing Brett Kincaid and Kevin Kincaid will file a motion seeking an award of attorneys' fees, costs, and expenses. Any attorneys' fees, costs, and expenses awarded or otherwise paid out of the assets of the Estate or Trust of Garvice D. Kincaid shall be funded solely by Fund C out of the assets distributed to Fund C pursuant to the terms of this settlement.
On December 26, 2007, JTG filed a motion with the Fayette Circuit Court for attorney fees of $2.8 million dollars. JTG asserted that its representation of the Kincaid Brothers had resulted in a $28 million savings to Fund C, which savings constituted a "common fund" for the current and future beneficiaries of Fund C. As such, JTG believed it was entitled to an award of reasonable fees under KRS 412.070.[2]
The Kincaid Brothers, the Advisory Committee, and the Trustee all opposed JTG's motion, arguing that it was in breach of the hourly fee agreement between JTG and the Kincaid Brothers, and that the fee was unreasonable under the circumstances. On March 6, 2008, the Fayette Circuit Court entered an order granting JTG's motion for $2.8 million in fees. The Kincaid Brothers' new counsel filed a motion to reconsider, which was denied. The Kincaid Brothers, the Kincaid Daughters, the Advisory Committee, and Central Bank & Trust as Trustee then appealed the $2.8 million award to this Court.
On February 5, 2010, this Court rendered an opinion (the "2010 Opinion") vacating the Fayette Circuit Court's order and remanding. Johnson v. Johnson, True, & Guarnieri, LLP , Nos. 2008-CA-000653-MR and 2008-CA-000668-MR, 2010 WL 391847 (Ky. App. Feb. 5, 2010) (reh'g denied , April 6, 2010) (disc. rev. denied , Mar. 16, 2011) (depublished). This Court instructed the circuit court to determine the Kincaid Brothers' proportionate share of the recovery to Fund C, then to determine whether an hourly fee arrangement existed between the Kincaid Brothers and JTG.[3] If the circuit court found there was an hourly-fee arrangement, it was instructed to enforce that agreement. If not, the court was instructed to entertain any motions by JTG for quantum meruit recovery against the Kincaid Brothers. This Court then instructed the circuit court to determine a reasonable fee as to the recovery *908 for the remaining beneficiaries of Fund C pursuant to KRS 412.070.
Following additional discovery, the circuit court granted partial summary judgment in favor of the Kincaid Brothers on October 20, 2011, finding that JTG and the Kincaid Brothers did agree to an hourly-rate engagement for JTG's services. On January 25, 2012, the Kincaid Brothers again moved for partial summary judgment, this time on the issue of whether the initial hourly-rate fee agreement between JTG and themselves had been modified. On February 13, 2012, JTG moved to vacate the court's October 20, 2011, finding of partial summary judgment. JTG argued that depositions of the Kincaid Brothers, taken subsequent to the partial summary judgment order, revealed that there were genuine issues of material fact concerning the existence of an hourly-rate fee agreement. Both the Kincaid Brothers' motion for partial summary judgment and JTG's motion to vacate partial summary judgment were denied by order dated March 20, 2012. In April of 2013, there was a two-day hearing concerning whether the hourly-rate fee arrangement had been modified and/or breached, at which Mr. True testified extensively regarding his fee arrangement with the Kincaid Brothers and the amount of work he put into the case. The court entered Findings of Fact, Conclusions of Law, and an Interlocutory Judgment on November 13, 2013, finding that JTG had not met its burden of proving that it and the Kincaid Brothers had modified the original hourly-rate fee arrangement. Additionally, the circuit court found that the Kincaid Brothers had breached the fee arrangement by failing to pay JTG's monthly statements in full, but JTG had waived this breach. The court then ordered the Kincaid Brothers to pay JTG the balance they owed under the hourly-rate fee agreement. The Kincaid Brothers have paid this amount in full.
On August 22, 2014, the Kincaid Brothers moved the court for an order stating that JTG was not entitled to any additional fee over the hourly-fee amounts it had already been paid. The Kincaid Brothers argued that JTG had represented all beneficiaries of Fund C, with the exception of the Kincaid Daughters, up until the point that the Settlement had been reached and a guardian ad litem was appointed to review it for the minor and unborn beneficiaries. Accordingly, the Kincaid Brothers asserted, there could be no common fund fee as such fee is only available when an unrepresented beneficiary has received a benefit that would not have been received but for another beneficiary paying for legal counsel. The Kincaid Brothers acknowledged that the 2010 Opinion had stated that the minor and unborn beneficiaries (the "Remaining Beneficiaries") had not been represented by counsel; however, the Kincaid Brothers asserted that this was an erroneous statement made in dicta.
On September 8, 2014, the circuit court held evidentiary hearings to determine the Kincaid Brothers' proportionate share of the enhancement to Fund C, which the court would then use to determine the reasonable fee owed to JTG from the Remaining Beneficiaries. For its case-in-chief, JTG called Judge David L. Knox as an expert witness. Judge Knox testified exclusively as to his opinion of a reasonable fee owed to JTG for its representation of the Remaining Beneficiaries of Fund C. Judge Knox did not offer an opinion on how to calculate the Remaining Beneficiaries' proportionate share of the benefit JTG had gained for Fund C, and JTG offered no other witnesses to address the issue during its case-in-chief. In rebuttal, the Advisory Committee called Michael Foley-who testified as to different formulae he had used to calculate the proportionate shares of the benefit to Fund C-and *909 Judge Gamble-who testified as to his opinion of the reasonableness of JTG's fees for the Remaining Beneficiaries.
On September 10, 2014, the circuit court entered an order denying the Kincaid Brothers' Motion for an Order that JTG is Not Entitled to an Hourly-Rates Fee It Has Been Paid. Thereafter, on September 23, 2014, the court entered an Opinion and Order addressing the amount of fees owed to JTG for the proportion of benefits gained for the Remaining Beneficiaries. By that order, the court found that the Kincaid Brothers' proportionate share of the total recovery to Fund C is the $8 million they were guaranteed in the Settlement, and that the remaining $20 million is the proportionate share of the Remaining Beneficiaries. Based on the amount of recovery accredited to the Remaining Beneficiaries, the court determined that JTG was still owed $482,000.00 in attorney fees. The court reached this calculation by reasoning that the Remaining Beneficiaries' benefit was more than double the Kincaid Brothers' benefit, and, as such, it was reasonable for the Remaining Beneficiaries to pay double the amount the Kincaid Brothers had paid to JTG.
A slew of post-disposition filings followed. On September 25, 2014, the Advisory Committee filed motion to alter, amend, and/or clarify with the circuit court, seeking to have the court alter the Opinion and Order to specify that the fee it awarded JTG was not collectible until such time that the funds accredited to the Remaining Beneficiaries were actually distributed to the Remaining Beneficiaries. To support this motion, the Advisory Committee cited to language from the 2010 Opinion, which stated:
While the case law set forth above limits the actual collection of fees by [JTG] until the time the funds are actually distributed to the beneficiaries, it does not affect the award of said fees based on the enhancement of funds available for distribution to these beneficiaries. See Howell , 181 S.W.2d at 45 ("The attorney is entitled to his proportionate share of the fee assessed against the [recovery paid] to date and the balance of the share assessed against the principal when the [remainder of the recovery is] paid to the [beneficiaries]....).
At p. 27.[4]
On October 2, 2013, JTG filed its own motion to alter or amend the Opinion and Order, requesting that the circuit court remove any language in its order referring to the fee it awarded JTG as a "contingency" fee. That same day, by a separate document, JTG responded to the Advisory Committee's motion to alter, amend, and/or clarify and filed a cross-motion to alter, amend and/or clarify. By this motion JTG noted the fact that any distributions to the Remaining Beneficiaries were at the sole discretion of the Advisory Committee, and argued that the Advisory Committee's motion to alter, amend, and/or clarify was essentially a motion to have the court render its award to JTG illusory.
On October 3, 2013, the Kincaid Brothers filed three separate motions-a motion for a new trial or proceedings in lieu of a new trial; a motion to alter or amend, in the event the court denied their motion for a new trial; and a motion for a court order that Fund C reimburse them for any fees and expenses they had personally paid to JTG. The motion to alter or amend was essentially the same as the Advisory Committee's motion to alter or amend. In their *910 motion for a new trial, the Kincaid Brothers maintained their argument that JTG had represented the Kincaid Brothers and the Remaining Beneficiaries and, therefore, could not be entitled to a common fund recovery. They additionally argued that the fee awarded to JTG was a contingency fee, which was in violation of ethical rules. Thereafter, all parties filed responses to the others' respective motions.
On October 21, 2014, the circuit court entered an order granting JTG's motion to alter or amend and its cross-motion to alter, amend, and/or clarify. The remaining motions filed by the Kincaid Brothers and the Advisory Committee were denied by this same order. Also on October 21, 2014, the circuit court entered a final judgment stating that: (1) the Kincaid Brother's proportionate share of the Fund C recovery was $8 million, and the Remaining Beneficiaries' proportionate share was $20 million; (2) JTG was entitled to a reasonable attorneys' fee of $482,000 from the Remaining Beneficiaries; and (3) the $482,000 fee shall be paid to JTG within 45 days of the entry of the judgment, bearing 12% interest per annum from the due date.
These appeals and cross-appeals followed.
II. ANALYSIS
There are a multitude of issues being raised on this appeal. JTG argues that the trial court erred in granting partial summary judgment in favor of the Kincaid Brothers on the issue of whether there was an hourly-rate fee agreement. Based on that argument, JTG asserts that the circuit court should have set the Kincaid Brothers' fee in quantum meruit , and that the interlocutory judgment and the common fund fee amount-as they were based on the amount the Kincaid Brothers had paid to JTG-should be reversed. In the alternative, JTG argues that the circuit court erred in finding that the hourly-rate fee agreement was not modified and in finding that JTG waived the Kincaid Brothers' breach of that agreement.
The Kincaid Brothers, the Kincaid Daughters, the Advisory Committee, and the Remaining Beneficiaries all argue that the circuit court erred in finding that additional fees (i.e., fees above what the Kincaid Brothers have already paid to JTG) are owed to JTG, as they contend that the Engagement Letter demonstrates that JTG represented both the Kincaid Brothers and the Remaining Beneficiaries in this action. Alternatively, all argue that, should we determine the Remaining Beneficiaries were not represented by JTG, the law of this state dictates that the Remaining Beneficiaries should only be responsible for reimbursing the Kincaid Brothers for a proportionate share of the fee the Kincaid Brothers have already paid to JTG. Should we not accept either of the above two arguments, all argue that the circuit court erred in ordering that the additional fees owed to JTG are immediately payable.
The Kincaid Brothers additionally argue that the circuit court erred in its determination of their proportionate share of the recovery to fund C; that the trial court erred as a matter of law in denying their motion for reimbursement from Fund C; and that JTG's request for a "common fund fee" is unethical in that it is essentially a request for a contingency fee, and therefore is violative of SCR [5] 3.130 (1.5).
A. Existence of an Hourly-Rate Fee Agreement
JTG argues that the trial court erred in finding on summary judgment *911 that an hourly-rate fee agreement existed between JTG and the Kincaid Brothers, then further exacerbated this error by denying JTG's motion to vacate that finding of summary judgment.
The proper standard of review on appeal when a trial judge has granted a motion for summary judgment is whether the record, when examined in its entirety, shows there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."
Hammons v. Hammons , 327 S.W.3d 444, 448 (Ky. 2010) (quoting CR [6] 56.03 ). In deciding issues on summary judgment, evidence must be viewed in the light most favorable to the non-moving party. Steelvest, Inc. v. Scansteel Serv. Ctr., Inc. , 807 S.W.2d 476 (Ky. 1991). Because summary judgments involve no fact finding, "we review the trial court's issuance of summary judgment de novo." Bd. of Regents of N. Kentucky Univ. v. Weickgenannt , 485 S.W.3d 299, 307 (Ky. 2016).
Under SCR 3.130 (1.5)(b),
the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate.
A fee agreement is a contract, and is governed generally by the rules of contracts. See RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 18 cmt. c (2000). Therefore, the fundamental elements of "offer and acceptance, full and complete terms, and consideration" must be present for a fee agreement to constitute a valid contract. Commonwealth v. Morseman , 379 S.W.3d 144, 149 (Ky. 2012) (quoting Cantrell Supply, Inc. v. Liberty Mut. Ins. Co. , 94 S.W.3d 381, 384 (Ky. App. 2002) ). "For the terms [of a contract] to be considered complete they must be 'definite and certain' and must set forth the 'promises of performance to be rendered by each party.' " Energy Home, Div. of S. Energy Homes, Inc. v. Peay , 406 S.W.3d 828, 834 (Ky. 2013) (quoting Kovacs v. Freeman , 957 S.W.2d 251, 254 (Ky. 1997) ). However, because
lawyers almost always possess more sophisticated understanding of fee arrangements, it is therefore appropriate to place the balance of the burden of fair dealing and the allotment of risk in the hands of the lawyer in regard to fee arrangements with clients, as well as to state clearly the terms of the fee arrangement.
7A C.J.S. Attorney & Client § 378 (emphasis added). Further, a contract may be "based on a promise which may be inferred from the conduct of the parties." Kellum v. Browning's Adm'r , 231 Ky. 308, 21 S.W.2d 459, 463 (1929). "To constitute such a contract there must, of course, be a mutual assent by the parties-a meeting of minds-and also an intentional manifestation of such assent. Such manifestation may consist wholly or partly of acts, other than written or spoken words." Id. (citing Springfield Fire & Marine Ins. Co. v. Snowden , 173 Ky. 664, 191 S.W. 439 (1917) ).
The Kincaid Brothers and JTG agree that in two previous matters, JTG had billed the Kincaid Brothers based on an hourly-rate fee agreement, with the Kincaid Brothers making partial payments on the balance of their account with JTG, and JTG petitioning the court for the remaining amount due from Fund C at the end of each matter. To support their assertion *912 that JTG agreed to represent them under the same hourly-rate fee agreement in the present litigation, the Kincaid Brothers presented to the circuit court a letter that JTG sent to them on January 5, 2006, one week after the Kincaid Brothers' initial meeting with JTG to discuss the present litigation (the "Engagement Letter"). That letter states that JTG is "more than happy to represent [the Kincaid Brothers] and Kevin's children in this important matter," and contains the following provision on the topic of attorney fees:
I do want to clarify one point, however, in order to avoid any confusion or disputes in the future. This may be a substantial undertaking. Obviously, the reasonableness of the proposal to be made by the Advisory Committee may govern the complexity and duration of this litigation. If, however, the two of you want to oppose any allocation of Fund C assets to Funds A and B, we will be in for a complex, difficult and time-consuming fight with the Advisory Committee and their attorneys. This firm will bill for services rendered at our regularly [sic] hourly rates on a monthly basis and will ask that our fees be paid in a timely fashion . We certainly have no objection to petitioning the Court for the reimbursement of your fees from the trust at the conclusion of this matter, but we do not want to be in the position where we are expected to wait until the conclusion of the litigation to be paid and risk the Court not requiring the trust to pay your fees.
(Emphasis added). Following this letter, JTG sent the Kincaid Brothers monthly invoices from January 2006 through June 2007. These invoices, which the Kincaid Brothers tendered to the court in support of their motion for partial summary judgment, indicate that from January 2006 through July 2006 the Kincaid Brothers received a monthly invoice and made a partial payment-but never a payment-in-full-on their account balance each month. Starting in August of 2006, the Kincaid Brothers received monthly invoices notating their account balance and the fact that JTG had drawn a check from their escrow account to pay the account balance in full each month. This practice continued through December 2006.[7] In February 2007, JTG sent the Kincaid Brothers a letter, along with a January 2007 invoice, which stated that JTG would no longer be drawing from the escrow account to cover the balance of the Kincaid Brothers' account. Additionally, the letter contained the following statement:
I am willing to ride with two of you for a while concerning these bills. It would be appreciated if you could make some fairly substantial partial payment on these monthly bills as we move through this process. I am not going to insist on full payment.
...
Quite frankly, it is my plan to make a very substantial fee petition at the end of this case. To be completely candid, I believe that the complexity of this case, the amount of time and attention I am having to devote to this matter, and numerous other combined factors, would justify a fee well above an hourly rate.
From January 2007 through June 2007, JTG resumed the practice of sending the Kincaid Brothers monthly invoices and receiving *913 partial payment on the account balance each month. Also in June of 2007, JTG sent the Kincaid Brothers a letter indicating that the hourly billing rate had changed from $250/hour to $275/hour in January 2007, and that the difference in billing had been noticed on the Kincaid Brothers' account. The letter further stated that it was JTG's plan to petition the court for fees at the conclusion of the case. The letter indicated that "[t]he amount of fees [JTG will] petition the Court for would depend upon the nature and amount of recovery." JTG submitted no invoices to the Kincaid Brothers from July 2007 forward.[8]
To counter the Kincaid Brothers' assertion of the hourly-rate fee agreement on motion for partial summary judgment, and in making its cross-motion for partial summary judgment, JTG argued that, despite the existence of the Engagement Letter, the Kincaid Brothers and JTG had a fundamental disagreement regarding the terms under which JTG would be compensated for its representation. JTG argued that this disagreement, while not initially realized by JTG, has existed from the onset of its representation of the Kincaid Brothers, which demonstrates that there was never a meeting of the minds between the parties. JTG argued that the Engagement Letter was an offer from JTG, but that this offer was never accepted by the Kincaid Brothers, as the Kincaid Brothers never made a full payment based on the hourly-rate amount they were charged. In seeking to have the court's finding of partial summary judgment in favor of the Kincaid Brothers vacated, JTG pointed to testimony of the Kincaid Brothers given in subsequent depositions, which they believe created a genuine issue of material fact as to whether the Engagement Letter evidences an hourly-rate fee agreement.
When deposed, Brett Kincaid agreed that the Engagement Letter stated that JTG asked that its fees be paid in a timely fashion. Brett stated that, to him, the term "timely fashion" was "pretty ambiguous." When further questioned about this, Brett indicated that he "didn't really pay any mind at all to this letter," but that he knew what was meant as far as payment terms based JTG's prior representations of the Kincaid Brothers. When counsel for JTG further questioned Brett on this, noting that the Engagement Letter did not state that the Brothers could make partial payments, Brett stated "You know what? I really don't care what this letter says. I'm saying that our agreement was that it's going to be an hourly fee." When Kevin Kincaid was questioned about the Engagement Letter in his deposition, he stated that in the previous litigation JTG had billed him and his brother on an hourly-rate basis, and that, based on the Engagement Letter, he assumed that they would continue this payment arrangement.
Based on the above evidence of record, we affirm the trial court's finding of partial summary judgment in favor of the Kincaid Brothers on the issue of whether there was an hourly-rate fee agreement, and likewise affirm the court's decision to deny JTG's motion to vacate that partial summary judgment order. Contrary to JTG assertions, we do not view the Engagement Letter as JTG's offer to the Kincaid Brothers to form a contract. At the time the Engagement Letter was executed, JTG had already begun work on its representation of the Kincaid Brothers in this matter. The Engagement Letter memorializes JTG's agreement and acceptance to *914 represent the Kincaid Brothers based on the terms discussed in their meeting on December 29, 2005. This attorney fee contract is not only evidenced by the Engagement Letter; it is evidenced by the fact that JTG continually worked on the case and sent the Kincaid Brothers monthly statements, reflecting the hourly-rate fee, for eighteen months and that payments were received from the Kincaid Brothers and accepted by JTG.
B. Modification and/or Breach of the Hourly-Rate Fee Agreement
As we agree with the trial court as to the existence of an hourly-rate fee agreement, we must now turn to JTG's second argument on appeal: that the November 13, 2013, Findings of Fact, Conclusions of Law, & Interlocutory Judgment ("FFCL") must be reversed. JTG argues that: (1) the trial court erred in that it made an erroneous finding of fact and applied the wrong legal standard regarding modification of the fee agreement; (2) the Kincaid Brothers' breach discharged any fee agreement between them and JTG; and (3) JTG did not waive the Kincaid Brothers' breach.
We will not set aside a trial court's findings of fact unless they are clearly erroneous. CR 52.01. Findings of fact are clearly erroneous when "there exists no substantial evidence in the record to support [the] findings." M.P.S. v. Cabinet for Human Res. , 979 S.W.2d 114, 116 (Ky. App. 1998) (citing V.S. v. Commonwealth, Cabinet for Human Res. , 706 S.W.2d 420, 424 (Ky. App. 1986) ). "Substantial evidence has been defined as that which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person." Stanford Health & Rehab. Ctr. v. Brock , 334 S.W.3d 883, 884 (Ky. App. 2010) (citing Sec'y,Labor Cabinet v. Boston Gear, Inc. , 25 S.W.3d 130, 134 (Ky. 2000) ).
In arguing for reversal of the FFCL, JTG asserts that the trial court erred in finding that "there is no evidence that JTG and the Kincaid Brothers agreed on the same terms for a new agreement regarding the arrangement between them and reduced that agreement to writing." First, JTG asserts that this statement is simply untrue, as JTG believes its plan to move the court to set a reasonable fee for its representation of the Kincaid Brothers was memorialized in numerous communications between it and the Kincaid Brothers, as well as in the Settlement, which was signed by the Kincaid Brothers. Second, JTG argues that the trial court's statement demonstrates that the court was under the erroneous assumption that modification of fee agreements must be in writing, and shows that the trial court "seemed to believe that JTG had to prove that it reached agreement with the Kincaid Brothers on the specifics of a common fund fee award"-something that JTG asserts is impossible to do.
1. Contract Modification
JTG is correct in its assertion that a contract modification between itself and the Kincaid Brothers need not necessarily be in writing to be valid. See Murray v. Boyd , 165 Ky. 625, 177 S.W. 468, 471 (1915) ("It is a well-settled rule that a contract not required to be in writing may be discharged or modified by subsequent oral agreement, and that the parol evidence rule does not exclude oral evidence thereof in a proper case."). Further, there is no dispute among the parties or the trial court that there are communications of record indicating that JTG was dissatisfied with the hourly-rate fee agreement and desired to modify that agreement. See supra pp. 911-12. The trial court acknowledged in the FFCL that the Kincaid Brothers were aware of JTG's intention to *915 seek fees on another basis and did not state an objection. As to the Settlement, it does not evidence any agreement other than the agreement set forth in the Engagement Letter-the pertinent provision merely states that JTG will petition the court for payment of its fees from Fund C, as had always been the plan. See supra pp. 906, 910-11. In spite of JTG's assertions, memorialization of a party's wish to modify an agreement is not sufficient proof to show that the agreement was, in fact, modified.
Therefore, the question is whether the Kincaid Brothers' failure to object to JTG's intentions is sufficient to constitute a modification of the original fee agreement. Fee agreements, being contracts, are subject to the rules regarding contract modification. "Contracts ordinarily may be modified by mutual consent of the parties, provided they follow the appropriate formalities. Even with client consent, however, modifications of existing fee agreements are usually suspect because of the fiduciary nature of the client-lawyer relationship." ABA Formal Op. 11-458 (2011). JTG argues that the fact that the Kincaid Brothers did not raise objections to JTG's intentions to modify the fee agreement is sufficient evidence of mutual consent of their agreement. To support this, JTG cites language from the RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 18 cmt. c (2000), which states that contracts between lawyers and clients can be "evidenced by the circumstances, as when a client proceeds with a lawyer after having been informed of the lawyer's fees," and argues that if an initial contract between lawyers and clients can be evidenced by the circumstances, logic provides that amendments to that contract may also be evidenced by the circumstances.
We disagree. While JTG may be correct that the parties' agreement to modify need not necessarily be memorialized in writing, it is well-settled that "the proper rule to apply to a verbal contract, wherein it undertakes to modify or rescind a written contract, is that the evidence to do so must be clear and convincing; if not so, the written contract must prevail." Nat'l Union Fire Ins. Co. v. Duvall , 268 Ky. 168, 104 S.W.2d 220, 222 (1937). The evidence JTG has presented-statements of its intent to modify the agreement and the circumstances of the representation-does not constitute clear and convincing evidence, especially when taken in light of the fiduciary nature of the relationship between JTG and the Kincaid Brothers. As such, we cannot find that the circuit court committed clear error in finding that there was no contract modification.
2. Breach of Contract
JTG next asserts that the trial court's FFCL must be reversed as the court committed clear error in finding that, while the Kincaid Brothers had breached the hourly-rate fee agreement by not paying the monthly statements in full, JTG had waived its right to recover on breach by continuing to represent the Kincaid Brothers. JTG correctly asserts that waiver "is a voluntary and intentional surrender or relinquishment of a known right," and argues that it never voluntarily and intentionally relinquished its right to be paid. JTG contends that this is evidenced by the fact that it moved the court for an advance from Fund C, and that it ultimately moved the court for a common fund fee. This argument is without merit.
We must note that the circuit court did not find that JTG had waived its right to payment. Rather, it found that JTG waived its right to assert that the Kincaid Brothers had breached the agreement by failing to make timely payments in full because JTG continually accepted partial *916 payments from the Kincaid Brothers. There is substantial evidence of record to support this conclusion. For the first seven months of this litigation, JTG billed the Kincaid Brothers at an hourly-fee rate and accepted partial payments, payments which were frequently late. This practice resumed again in January of 2007, and continued for another six months. This practice alone indicates that JTG implicitly waived its right to prompt payments in full. Further, however, in February of 2007, JTG expressly conveyed the following to the Kincaid Brothers: "I am willing to ride with two of you for a while concerning these bills. It would be appreciated if you could make some fairly substantial partial payment on these monthly bills as we move through this process. I am not going to insist on full payment. " (Emphasis added). Based on this evidence, we cannot conclude that the trial court committed clear error in finding that JTG had waived any breach by the Kincaid Brothers.
C. Parties Represented by JTG
The Kincaid Brothers, the Kincaid Daughters, the Advisory Committee, and the Remaining Beneficiaries all contend that the trial court erred in awarding JTG a common fund fee on the basis that JTG represented the Kincaid Brothers and the Remaining Beneficiaries up until the time that the settlement was reached. Therefore, the parties contend that the common fund statute is inapplicable in this situation.
The trial court did not make a written ruling as to whether JTG represented the Remaining Beneficiaries on remand. Rather, it presumed that JTG did not represent the Remaining Beneficiaries, as it believed this Court had already decided that issue in the 2010 Opinion. Likewise, JTG points to the 2010 Opinion and argues that the law-of-the-case doctrine precludes consideration of whether JTG represented the Remaining Beneficiaries. Indeed, the Kincaid Brothers previously argued to this Court that KRS 412.070 was inapplicable to their situation. One of the reasons supporting this assertion was the Kincaid Brothers' belief that all beneficiaries with vested interests were represented by counsel. This Court found that argument to be without merit, stating that:
In this case, the fact that neither the minor nor the unborn beneficiaries were represented by counsel during the negotiation and execution of the settlement agreement which procured the substantial enhancement of funds allocated to Fund C is controlling . While the settlement agreement provided for the appointment of a guardian ad litem to review the agreement on behalf of these beneficiaries for "fairness and propriety," we do not believe that the limited role served by the guardian barred an award of attorney fees from the "common fund" ....
2010 Opinion at p. 28 (emphasis added).
Based in part on the above conclusion, this Court directed the trial court to first determine whether there was an hourly-rate fee agreement between JTG and the Kincaid Brothers. Following that determination, the trial court was to assess the proportionate fees against the recoveries of the Remaining Beneficiaries by looking to the "total character of the services rendered in this case, including the fee arrangement between the Kincaid Brothers and [JTG] established for those services and the actual time employed by [JTG] in the preparation and prosecution of this case." Id. at p. 30.
"The law-of-the-case doctrine is 'an iron rule, universally recognized, that an opinion or decision of an appellate court in the same cause is the law of the *917 case for a subsequent trial or appeal however erroneous the opinion or decision may have been.' " Univ. Med. Ctr., Inc. v. Beglin , 432 S.W.3d 175, 178 (Ky. App. 2014) (quoting Union Light, Heat & Power Co. v. Blackwell's Adm'r , 291 S.W.2d 539, 542 (Ky. 1956) ). "[I]f, on a retrial after remand, there was no change in the issues or evidence, on a new appeal the questions are limited to whether the trial court properly construed and applied the mandate." Inman v. Inman , 648 S.W.2d 847, 849 (Ky. 1982). The law-of-the-case doctrine is "a mechanism by which matters once litigated and finally determined remain final. Its proper application is a question of law to be reviewed de novo. " Univ. Med. Ctr., Inc. , 432 S.W.3d at 178.
In arguing that the law-of-the-case doctrine is inapplicable, the Kincaid Brothers, the Kincaid Daughters, the Advisory Committee, and the Remaining Beneficiaries note that this Court reached its conclusion as to the Remaining Beneficiaries without the benefit of the Engagement Letter, which they contend clearly demonstrates that JTG was representing the Remaining Beneficiaries. It is undisputed that the Engagement Letter was not a part of the record on the appeal, and was "new evidence" on remand. In that letter, counsel from JTG states, "I am more than happy to represent the two of you and Kevin's children in this important matter." (Emphasis added). This is the only statement in the letter in which JTG acknowledges whom it is representing. The parties contend that, because the trial court found that the Engagement Letter evidenced the existence of an hourly-rate fee agreement between JTG and the Kincaid Brothers, this statement in that letter should additionally establish that JTG represented all of the Remaining Beneficiaries. In addition to the Engagement Letter, in the Kincaid Brothers' brief they cite to an abundance of documents JTG filed with the circuit court in which JTG indicated that it represented Kevin Kincaid's children, and a few documents in which JTG indicates that it represents "any children of the Kincaid Brothers." All of the documents cited, however, were a part of the record in the first appeal. In fact, the Kincaid Brothers cited several of those documents in their brief to this Court during the first appeal. Thus, while the Engagement Letter itself is indeed new evidence of record, it is merely cumulative evidence. "The pertinent facts upon which the Court of Appeals based its findings did not change after the rendering of its opinion, and we find this argument [against application of the law-of-the-case doctrine] without merit." Ragland v. DiGiuro , 352 S.W.3d 908, 915 (Ky. App. 2010).
The Kincaid Brothers also argue that the law-of-the-case doctrine is inapplicable because whom JTG represented in this litigation is a question of fact and not a question of law. To support this contention, the Kincaid Brothers cite Inman , where the Court stated, "The law-of-the-case doctrine ... applies to the determination of questions of law and not questions of fact." Inman , 648 S.W.2d at 849. We agree that whether JTG represented the Remaining Beneficiaries is a question of fact. However, we must note that the first time the Kincaid Brothers made the argument concerning whom JTG represented was in its brief to this Court in the First Appeal. Despite the fact that the Kincaid Brothers had failed to preserve this argument, this Court nonetheless conducted a brief analysis of it to demonstrate that the claims failed substantively.
Accordingly, we decline to address the issue again today.
D. Application of KRS 412.070
The Kincaid Brothers, the Kincaid Daughters, the Remaining Beneficiaries, *918 and the Advisory Committee all argue that the trial court erred in its application of KRS 412.070 by concluding that: (1) the funds to JTG are immediately payable, and (2) that the fees owed by the Remaining Beneficiaries go to JTG, rather than to the Kincaid Brothers as reimbursement for attorney fees already paid.
1. Timing of Payment
All parties opposing the immediate payment of attorney fees to JTG argue that both the law-of-the-case doctrine and precedent from Howell v. Highland Cemetery , 297 Ky. 659, 181 S.W.2d 44 (1944), mandate that JTG cannot receive the attorney fees it was awarded on remand until those funds are actually distributed to the Remaining Beneficiaries. In Howell , the court stated as follows in determining when an attorney could receive a part of his common fund fee award:
We can think of no just reason for allowing the attorney in the present case to recover his entire fee before his clients are entitled to a recovery, even though he has made available the fund out of which they are to be paid in the future. At the institution of the action he knew that nothing could be recovered for the appellant on the bonds before 1945 because they were not due until then. In the absence of a contract [the attorney] has no right to expect his fee to be paid out of any money except that which has actually been recovered for distribution to his client. KRS 412.070.
Howell , 181 S.W.2d at 45-46. The Court cited this portion of Howell favorably in the 2010 Opinion. In rejecting the Kincaid Brothers' argument that no recovery existed from which an award of attorney fees could be made under KRS 412.070, the Court of Appeals cited Howell in noting that "While the case law ... limits the actual collection of fees by [JTG] until the time the funds are actually distributed to the beneficiaries , it does not affect the award of said fees based on the enhancement of funds...." 2010 Opinion at p. 27 (emphasis added). The same sentiment was again reflected in the 2010 Opinion in the Court's rejection of one of the claims of the Kincaid Brothers:
Likewise, the brothers cite no authority for their claim that the unborn beneficiaries' lack of vested rights at the time of the settlement agreement prohibited a ruling from the trial court that these beneficiaries should, in equity, nevertheless share in the costs of a common recovery under KRS 412.070if and when a recovery is actually distributed to them.
Id. at p. 28 (emphasis added). It is based on the above quoted sections of the 2010 Opinion that the parties claim the law-of-the-case doctrine dictates that JTG cannot receive its award until the funds have been distributed.
As discussed supra , "[a] final decision of this court, whether right or wrong, is the law of the case and is conclusive of the questions therein resolved." Williamson v. Commonwealth , 767 S.W.2d 323, 325 (Ky. 1989) (quoting Martin v. Frasure , 352 S.W.2d 817, 818 (Ky. 1961) ). Under the doctrine, "matters once litigated and finally determined remain final." Univ. Med. Ctr., Inc. , 432 S.W.3d at 178. The statements made in the 2010 Opinion by the Court regarding timing of payment were not decisions or opinions of the court on matters litigated. The issue of when JTG should receive its fees was not raised until the case was remanded to the circuit court. The Court's statements were dicta and, as such, do not constitute the law of the case. Further, even if we were to hold that the law-of-the-case doctrine was applicable, a court may find an exception to the law-of-the-case doctrine and decline to apply it *919 "where by inadvertence principles of law have been incorrectly declared the first time ... or injustice to the rights of parties would be done by adhering to the first opinion[.]" Nat'l Union Fire Ins. Co. , 291 S.W.2d at 542 (quoting Mangold v. Bacon , 237 Mo. 496, 141 S.W. 650, 654 (1911) ).
The plain language of KRS 412.070 states that: "[T]he court shall allow him his necessary expenses, and his attorney reasonable compensation for his services, in addition to the costs. This allowance shall be paid out of the funds recovered before distribution. " (Emphasis added). When a statute is plain and unambiguous, its language is to be given affect as written. Lynch v. Commonwealth , 902 S.W.2d 813, 814 (Ky. 1995). "Shall means shall." Vandertoll v. Commonwealth , 110 S.W.3d 789, 796 (Ky. 2003).
Additionally, we do not read Howell as requiring an attorney to wait until funds have been distributed to his clients before he is able to receive his fee. The language in Howell , quoted supra p. 917, says that the attorney should not be able to recover the entire fee "before his clients are entitled to a recovery," and that he has no right to his fee to be paid out of any money "except that which has actually been recovered for distribution to his client." Howell , 181 S.W.2d at 45-46 (emphases added). In Howell , the clients had to wait until a date certain, when the bonds at issue would mature, before the money would be available for them to receive or for their attorney to be paid. In this instance, the money is already in Fund C, and is available to be distributed to the Remaining Beneficiaries at the Advisory Committee's discretion. Further, the language used in Howell does not indicate that the court is creating a blanket rule for the application of KRS 412.070 ; it is case specific language.
Moreover, finding that JTG could not receive its common fund fee award until amounts were actually distributed to the Remaining Beneficiaries would cause a great injustice to JTG and render the award illusory. As all parties have acknowledged, distributions from Fund C are entirely at the discretion of the Advisory Committee. Assuming Brett Kincaid lives to his life expectancy, Fund C will not terminate until 2067. It would be manifestly unjust to find that Fund C, on behalf of the Remaining Beneficiaries, can wait 50 years before paying JTG its attorney fees. Therefore, we affirm the circuit court's finding that those fees are payable to JTG within 45 days of final judgment.
2. Reimbursement v. Additional Funds
In support of the argument that the remaining beneficiaries should only be made to reimburse the Kincaid Brothers for a portion of the attorney fees already paid, the Kincaid Brothers, the Kincaid Daughters, the Advisory Committee, and the Remaining Beneficiaries argue that having the Remaining Beneficiaries pay additional attorney fees to JTG would be duplicitous, as JTG has already been paid in full under the hourly-rate fee agreement contract. This argument would be correct if it had been argued and determined that the fee agreement contract did in fact cover the Remaining Beneficiaries. However, as that was not the case, the law dictates that JTG is entitled to collect an additional fee from the Remaining Beneficiaries. In Webster Cty. Soil Conservation Dist. v. Shelton , the Kentucky Court of Appeals-then the highest court of this state-found that an attorney who creates a common fund is entitled to enforce his contract against those with whom he contracted, and still collect a reasonable fee under KRS 412.070 from those with whom he did not contract, but who realized a benefit *920 from his efforts. 437 S.W.2d 934, 940 (Ky. 1969). The fact that JTG did not conduct extra work on behalf of the Remaining Beneficiaries is immaterial under the statute. See id. Therefore, we affirm the circuit court's finding that JTG is owed additional fees.
E. Proportionate Shares of the Benefit to Fund C
The Kincaid Brothers contend that the circuit court erred in holding that the Kincaid Brothers' proportionate share of the benefit to Fund C was limited to the $8 million they were guaranteed in the settlement agreement, and that the remaining $20 million was the proportionate share of the Remaining Beneficiaries. Determining the proportionate shares of the Kincaid Brothers and Remaining Beneficiaries was a question of fact. Therefore, we must determine "whether the trial court's findings of fact are clearly erroneous, i.e., whether or not those findings are supported by substantial evidence." Moore v. Asente , 110 S.W.3d 336, 354 (Ky. 2003).
In the opinion issued on September 23, 2014, the circuit court made the following findings related to the proportionate shares: (1) under the Settlement Agreement, the Kincaid Brothers received a total of $8 million from Fund C between the years 2008-2011; (2) outside of the $8 million, the Advisory Committee has total authority to make or not make distributions as it sees fit; (3) it is possible for the Advisory Committee to make additional distributions to the Kincaid Brothers, but it is also within its discretion to make no further distributions whatsoever; and (4) the $8 million provided by the Settlement Agreement is the only amount guaranteed to the Kincaid Brothers from Fund C. Based on these findings, the court concluded that the Kincaid Brothers' proportionate share of the recovery was $8 million, and that anything in excess of that was pure speculation.
The basis of the Kincaid Brothers' argument on this point is that JTG had the burden of proof on this issue, but did not offer any evidence at trial of what the Remaining Beneficiaries or the Kincaid Brothers' proportionate share of the recovery was. This contention, however, is unfounded. While JTG did not offer any expert testimony as to the proportionate shares, it did offer evidence to support its claim that the Kincaid Brothers' proportionate share was only $8 million. JTG introduced the Settlement Agreement-which guarantees the Kincaid Brothers $8 million in distributions-and the trust agreement-which expressly provides that the Advisory Committee has complete discretion in making future distributions. Additionally, JTG elicited testimony from Michael Foley by which he acknowledged that the Kincaid Brothers were only guaranteed $8 million, and that any other distribution is wholly discretionary.
Based on the above, we cannot find error. JTG met its burden at trial in presenting evidence adequate to support a conclusion in its favor. The trial court was in its right to accept that evidence, and to make its findings of fact based on that evidence. Accordingly, we affirm the circuit court's order regarding the proportionate shares of Fund C.
F. Kincaid Brothers' Motion for Reimbursement from Fund C
Additionally, the Kincaid Brothers argue that the circuit court erred in denying their motion for reimbursement of attorney fees. The Kincaid Brothers contend that they are contractually entitled, under the Settlement, to reimbursement from Fund C of the attorney fees and expenses they paid in opposing the reallocation plan.
*921 In addition to their contractual right, the Kincaid Brothers argue that reimbursement would be equitable-as it is only because of their opposition to the reallocation plan that Fund C benefitted at all-and that the request for reimbursement cannot come as a surprise to any of the parties.
Matters concerning attorney fees lie "within the sound discretion of the trial court and [the court's] decision will not be disturbed on appeal absent an abuse of discretion." Ford v. Beasley , 148 S.W.3d 808, 813 (Ky. App. 2004) (citing King v. Grecco , 111 S.W.3d 877, 883 (Ky. App. 2002) ). The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. Commonwealth v. English , 993 S.W.2d 941, 945 (Ky. 1999). Additionally, where a trustee of a trust is given broad discretion under the trust documents, as is the case here, "the court will not restrict the trustee in the exercise of his discretion unless it appears that he is guilty of bad faith or is acting in an arbitrary manner." Combs v. Carey's Tr. , 287 S.W.2d 443, 445 (Ky. 1955).
As to the Kincaid Brothers' contention that they have a contractual right to be reimbursed from Fund C, the plain language of the Settlement indicates no such entitlement. The provision of the Settlement to which the Kincaid Brothers cite to support their argument is paragraph 15, which reads:
The attorneys representing Brett Kincaid and Kevin Kincaid will file a motion seeking an award of attorneys' fees, costs, and expenses. Any attorneys' fees, costs, and expenses awarded or otherwise paid out of the assets of the Estate or Trust of Garvice D. Kincaid shall be funded solely by Fund C out of the assets distributed to Fund C pursuant to the terms of this settlement.
While this paragraph states that JTG would file a motion seeking its attorney fee award, which it did, and that fees and costs paid out of the estate would be paid by Fund C, there is nothing suggesting that Fund C would pay the fees awarded against the Kincaid Brothers.
The Kincaid Brothers' remaining arguments on the point are unmeritorious. The Brothers are correct in their assertion that, had they not hired JTG, the Remaining Beneficiaries would be without a recovery. However, Fund C has already been ordered to pay JTG attorney fees based on the proportionate recovery to the Remaining Beneficiaries; the Remaining Beneficiaries are not inequitably gaining a benefit. As to the argument that the Advisory Committee cannot be surprised by the Kincaid Brothers' request for reimbursement, perhaps this is true, but the argument does not provide any evidence that the trial court abused its discretion in denying the Kincaid Brothers' motion. The Kincaid Brothers reference the Agreed Order between the parties, entered on August 16, 2006, which granted the Kincaid Brothers an advance of $50,000.00 for attorney fees. Part of that Agreed Order stated:
[N]either the [Kincaid Brothers] nor their counsel shall be entitled to seek any further advances or awards of fees and expenses until after this Court enters its final judgment in this case; provided, however, that the pendency of an appeal from this Court's judgment will not preclude the [Kincaid Brothers] or their counsel from seeking such an advance or award.
While this provision does support the Kincaid Brothers' claim that the Advisory Committee could not have been surprised at the request for funds, it does not support the notion that Fund C was required to reimburse the Kincaid Brothers if and *922 when they sought reimbursement. The Kincaid Brothers have not made any showing that the Advisory Committee acted arbitrarily or in bad faith in declining to reimburse the Kincaid Brothers for their legal costs, as is required before a court will interfere with the Advisory Committee's discretion.
Based on the above, we do not find that the trial court abused its discretion in declining to order the Advisory Committee to reimburse the Kincaid Brothers for their attorney fees.
G. Common Fund Awards & SCR 3.130 (1.5)
The Kincaid Brothers also claim that JTG has violated SCR 3.130 (1.5) by requesting a fee under the common fund statute. The brothers claim that JTG knew from the outset that it was representing the Kincaid Brothers and the Remaining Beneficiaries. By seeking the common fund fee, they contend JTG is seeking an unreasonable fee, in violation of SCR 3.130. The Brothers contend that without any unrepresented beneficiaries, JTG has no entitlement to seek a common fund award. As discussed above, this Court has already found that JTG is entitled to a common fund award under KRS 412.070 based on the benefit the Remaining Beneficiaries received.
The Kincaid Brothers further claim that the common fund fee is essentially a request for a contingency fee, and is therefore violative of SCR 3.130 (1.5). This claim is solely based on the fact JTG's requested fee was for a percentage of the Remaining Beneficiaries proportionate recovery. A contingency fee, by its very name, is a fee that is contingent on the occurrence of some future, uncertain, event. JTG requested its common fund award after the Settlement was entered. The fact that JTG's requested fee was based on a percentage of the amount recovered for the Remaining Beneficiaries does not make it a contingency fee.
III. CONCLUSION
Based on the above analysis, we affirm the Fayette Circuit Court on all counts.
ALL CONCUR.

KRS (Kentucky Revised Statutes) 412.070(1) is the Kentucky common funds statute. It states, in pertinent part, as follows:
In actions for the settlement of estates, or for the recovery of money or property held in joint tenancy, coparcenary, or as tenants in common, or for the recovery of money or property which has been illegally or improperly collected, withheld, or converted, if one (1) or more of the legatees, devisees, distributees or parties in interest has prosecuted for the benefit of others interested with him, and has been to trouble and expense in that connection, the court shall allow him his necessary expenses, and his attorney reasonable compensation for his services, in addition to the costs. This allowance shall be paid out of the funds recovered before distribution....

At the circuit court, Mr. True, lead counsel for the Kincaid Brothers, asserted that there had never been an hourly-rate fee arrangement between himself and the Kincaid Brothers. The circuit court accepted Mr. True's testimony as true. Upon hiring new counsel, the Kincaid Brothers found and attached a letter to their Appellant Brief-discussed in greater detail infra -which indicated the existence of an hourly-fee arrangement. JTG successfully moved to strike the letter from the Kincaid Brothers' brief on appeal, on the grounds that the letter was not a part of the record considered by the Fayette Circuit Court. The letter is now properly a part of the record on this appeal.

Citations to the 2010 Opinion use the page numbers as they are found on the version available at http://opinions.kycourts.net.

Rules of the [Kentucky] Supreme Court.

Kentucky Rules of Civil Procedure.

In May of 2006, JTG moved the court, on behalf of the Kincaid Brothers, to compel the Advisory Committee to make a distribution of $75,000.00 from Fund C to the Kincaid Brothers for the purpose of covering litigation expenses. After some negotiation, the Advisory Committee advanced $50,000.00 from Fund C to be placed in an escrow account with JTG.

Monthly invoices for July 2007 forward were, however, filed by JTG with the Fayette Circuit Court under seal.