RENDERED:  APRIL 19, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1106-MR

KENDALL E. HANSEN, M.D.;
KENDALL E. HANSEN, M.D., PLC;
AND CRESTVIEW HILLS SURGERY
CENTER, PLLC                                                      APPELLANTS


                    APPEAL FROM KENTON CIRCUIT COURT
v.                  HONORABLE PATRICIA M. SUMME, JUDGE
                    ACTION NO. 21-CI-01008


CHARLES A. ROBERTS, M.D.                                          APPELLEE



                              OPINION
                             AFFIRMING

                          ** ** ** ** **

BEFORE:  CALDWELL, GOODWINE, AND LAMBERT, JUDGES.

LAMBERT, JUDGE:  Kendall E. Hansen, M.D.; Kendall E. Hansen, M.D., PLC;

and Crestview Hills Surgery Center, PLLC, (collectively, the Defendants or the

Appellants) have appealed from the August 23, 2022, judgment and final order of

the Kenton Circuit Court granting a judgment to Charles A. Roberts, M.D., based

upon its earlier declaration that the April 7, 2021, Redemption and Settlement Agreement was valid and its holding that the Defendants had not performed their obligations under it and were therefore in breach. We affirm.

Dr. Roberts and Dr. Hansen are both physicians who specialize in interventional pain medicine and pain management. Kendall E. Hansen, M.D., PLC, is a Kentucky professional limited liability company that operates under the assumed name of Interventional Pain Specialists, PLC (IPS), in which Dr. Hansen had an ownership and membership interest. Crestview Hills Surgery Center, PLLC, (Crestview) is also a Kentucky professional limited liability company. Dr. Hansen is the registered agent for both companies. In October 2015, Dr. Roberts entered into a Physician Services Agreement (PSA) with IPS to provide professional medical services, and in January 2017 he acquired an ownership and membership interest in IPS. In September 2018, Dr. Roberts and Dr. Hansen acquired equal ownership and membership interests in Crestview.[1]

Dr. Roberts decided to terminate his PSA in May 2020, and he stopped providing services to IPS and was no longer consulted about decisions for IPS or Crestview as of July 2020. This decision led to disputes between the parties regarding their respective contractual rights. By February 2021, the parties had reached a mediated agreement to settle these disputes, and, according to Dr.

_____

[1] Dr. Roberts' father later acquired a minority ownership interest in that company.

Roberts, had reached a full and final agreement on the written terms of the settlement agreement, which included a large payment[2] to Dr. Roberts from the Defendants in exchange for his interests in IPS and Crestview. The acceptance of the draft agreement, Dr. Roberts asserted, happened via an email dated April 7, 2021 (the April draft). However, the Defendants refused to execute the agreement or abide by its terms, which led to the filing of the underlying action.

On June 24, 2021, Dr. Roberts filed a complaint with the Kenton Circuit Court against the Defendants seeking a declaratory judgment pursuant to Kentucky Revised Statutes (KRS) 418.040 that the settlement agreement was a valid, effective, and enforceable contract. He also pled a cause of action for breach of contract based upon the Defendants' refusal to execute and perform under the settlement agreement. Dr. Roberts sought specific performance of the settlement agreement as well as the costs of the action, including reasonable attorney fees.

On July 23, 2021, the Defendants filed a counterclaim based upon the operating agreement and the PSA for IPS, and they alleged claims for breach of contract, fiduciary duty, and contribution. The same day, the Defendants moved to dismiss Dr. Roberts' complaint pursuant to Kentucky Rules of Civil Procedure (CR) 12.02(f). They argued that Dr. Roberts could not establish that a contract

---

[2] The agreement provided that the Defendants would pay Dr. Roberts $2M, half of which was due immediately, and the second half was to be paid in monthly installments between January 2022 and December 2023.

existed and could not present a signed document that would satisfy the statute of frauds. Dr. Roberts disputed these arguments in response.

On August 24, 2021, Dr. Roberts filed a motion seeking a declaratory judgment as to the validity of the settlement agreement, including an argument that the Defendants should be estopped from relying upon the statute of frauds defense. In a separate motion filed the same day, Dr. Roberts moved the court to dismiss the Defendants' counterclaim, noting that the court would need to first decide the threshold issue of whether the settlement agreement was valid and enforceable. He argued that the claims made in the counterclaim were waived and released by the settlement agreement. The Defendants objected.

The court heard arguments on the pending motions from the parties in September, and on May 4, 2022, it entered a declaratory judgment, rejecting the Defendants' statute of frauds defense and concluding that the settlement agreement was valid and enforceable as of April 7, 2021. At that time, Dr. Roberts was no longer a member or owner of IPS or Crestview, and the parties became obligated to perform the terms of the agreement.

The Defendants moved the court to alter, amend, or vacate the declaratory judgment pursuant to CR 59.05 asserting that the circuit court had misapplied the applicable law. Dr. Roberts objected to their motion and moved the court for the entry of a judgment and final order addressing the pending motions

and a final judgment on his breach of contract claim in order to effectuate the terms of the settlement agreement and mutual releases.

On August 23, 2022, after hearing arguments from the parties, the court entered a final order denying the Defendants' motions to alter, amend, or vacate and to dismiss, granting Dr. Roberts' motion to dismiss the counterclaim, and entering a judgment for Dr. Roberts, which included the payment of money under the terms of the settlement agreement, pre- and post-judgment interest, attorney fees, and costs. This appeal, in which the Defendants (now Appellants) assert that a valid and enforceable contract does not exist, now follows.

The applicable standard of review is disputed. Citing *Foreman v. Auto Club Property-Casualty Insurance Company*, 617 S.W.3d 345, 349 (Ky. 2021), the Appellants contend that the circuit court's decision should be treated as a summary judgment since the court disposed of the merits based on the briefing and accompanying evidence without holding a trial. Thus, they argue, our review should be *de novo*. On the other hand, Dr. Roberts asserts that we should apply the abuse of discretion standard, citing the statutory language of KRS 418.040 and KRS 418.065 (a court may make a declaration of rights or refuse to exercise that power) as well as this Court's opinion in *Gwaltney v. Board of Social Work*, 644 S.W.3d 270, 273 (Ky. App. 2022) ("While we agree that the trial court's interpretation of legal authority is subject to *de novo* review, the trial court's

refusal to issue a declaratory judgment here also represents its exercise of discretion under KRS 418.065[.]”).

We agree with the Appellants that, because there was no trial or hearing and the circuit court based its decision on the evidence filed in the record and legal arguments of counsel, the appropriate standard of review is the summary judgment standard as set out in *Foreman*, *supra*:

> A party seeking a declaratory judgment may, at any time move with or without supporting affidavits for a summary judgment in his favor. In cases in which the trial court has granted summary judgment in a declaratory judgment action and no bench trial is held, we use the appellate standard of review for summary judgments.
>
> When reviewing a trial court's grant of summary judgment, we determine whether the record supports the trial court's conclusion that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Because summary judgment does not require findings of fact but only an examination of the record to determine whether material issues of fact exist, we generally review the grant of summary judgment without deference to the trial court's assessment of the record or its legal conclusions.

617 S.W.3d at 349 (internal quotation marks, ellipses, and citations in footnotes omitted). *See also Ladd v. Ladd*, 323 S.W.3d 772, 776 (Ky. App. 2010) (“In cases where a summary judgment has been granted in a declaratory judgment action and no bench trial held, the standard of review for summary judgments is utilized.”).

Although neither the court nor the parties used the term "summary judgment," we hold that the declaratory judgment (declaring that the settlement agreement was a valid and enforceable contract) and the judgment and final order (finding that the Appellants breached the settlement agreement and entering a judgment for Dr. Roberts) are in effect a summary judgment. Collectively, the judgments determined the rights of the parties and decided the merits of the action without a trial or evidentiary hearing.

The legal issue we must decide in this case is whether the circuit court properly decided that a valid and enforceable contract existed between the parties. "An agreement to settle legal claims is essentially a contract subject to the rules of contract interpretation. It is valid if it satisfies the requirements associated with contracts generally, *i.e.*, offer and acceptance, full and complete terms, and consideration." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384 (Ky. App. 2002). An oral settlement agreement may also be "binding and enforceable." *Spot-A-Pot, Inc. v. State Res. Corp.*, 278 S.W.3d 158, 161 (Ky. App. 2009).

> [A] contract may be "based on a promise which may be inferred from the conduct of the parties." *Kellum v. Browning's Adm'r*, 231 Ky. 308, 21 S.W.2d 459, 463 (1929). "To constitute such a contract there must, of course, be a mutual assent by the parties – a meeting of minds – and also an intentional manifestation of such assent. Such manifestation may consist wholly or partly of acts, other than written or spoken words." *Id*. (citing

*Springfield Fire & Marine Ins. Co. v. Snowden*, 173 Ky. 664, 191 S.W. 439 (1917)).

*Kincaid v. Johnson, True & Guarnieri, LLP*, 538 S.W.3d 901, 911 (Ky. App. 2017). "The construction and interpretation of a contract is a matter of law for the court. Our review of the trial court's decision is *de novo* without deference to the trial court's interpretation." *Spot-A-Pot, Inc.*, 278 S.W.3d at 161 (citations omitted).

For their first argument, the Appellants asserts that the April draft was not a valid and enforceable contract for various reasons, including that it was labeled as a draft, it was a counteroffer from Dr. Roberts that the Appellants had not accepted, and its terms were not full and complete. The circuit court ruled that it was valid, stating:

> The email from then counsel for [Dr. Roberts] to counsel for [the Appellants] dated April 7, 2021, accepted the offer of the draft agreement with no additional substantive changes: at that point, there was a meeting of the minds and, therefore, a contract. The terms of the agreement as set forth in the written document are full and complete. [Dr. Roberts] performed his part of the agreement in consideration of [the Appellants'] agreement of payment, so there was ample consideration.

Having reviewed the record, we agree that the communication between the parties along with the draft of the settlement agreement establish the necessary elements to form a binding contract, including a meeting of the minds. And we find no merit in the Appellants' argument that labeling the settlement agreement as a draft makes

it otherwise invalid under the circumstances of this case. We have reviewed the cases cited by the Appellants and agree with Dr. Roberts that these citations provide no support for their position. Accordingly, we find no error in the circuit court's conclusion that a valid contract existed.

Next, the Appellants argue that the statute of frauds applies in this case to invalidate the settlement agreement because it was not signed and could not be performed within one year (half of the monetary payment was to be made in installments over a two-year period), bringing it under KRS 371.010(7):

> No action shall be brought to charge any person . . . [u]pon any agreement that is not to be performed within one year from the making thereof . . . unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged therewith, or by his authorized agent.

Dr. Roberts, in turn, argues that the statute of frauds does not apply to settlement agreements and that it is otherwise inapplicable because he was required to (and did) perform under the agreement within one year of its execution.

The circuit court agreed with Dr. Roberts, relying upon the holding in *United Parcel Service Company v. Rickert*, 996 S.W.2d 464, 471 (Ky. 1999), in which the Supreme Court of Kentucky recognized that "[i]f an agreement is capable of being performed within a year, then it does not fall within the statute of frauds." In concluding that the statute of frauds did not apply, the Supreme Court

stated that "Rickert fully performed his part of the bargain with UPS by continuing to fly for Orion and UPS during the transition time. . . . Although the transition period was more than a year, UPS was capable of hiring Rickert at any time and thereby performing its part of the bargain." *Id.* In the present case, the circuit court agreed that the statute of frauds did not apply in the present case, stating:

> [Dr. Roberts] here performed immediately by ceasing to work with defendants or exercise any control over their business and the defendants then immediately owed him two million dollars; merely allowing for a payment plan longer than a year is not sufficient to trigger the application of the statute if the payment could have been made within the year.

Dr. Roberts also directs this Court to the holding of the former Court of Appeals that "[the statute of frauds] applies only to contracts which are not to be performed upon either side within a year, and not to agreements which are to be performed or have been performed by one or either of the parties within that time." *Botkin v. Middlesborough Town & Land Co.*, 139 Ky. 677, 66 S.W. 747, 747-48 (1902). We find no error in the circuit court's conclusion that the statute of frauds does not apply in this case because Dr. Roberts had performed under the agreement.

While we need not reach this issue, we also find merit in Dr. Roberts' citation to *Moore Prop. Inv., LLC v. Fulkerson*, No. 2018-CA-000577-MR, 2020

-10-

WL 4515418, at *3 (Ky. App. Jul. 2, 2020), in which this Court stated:[3]

> The statute of frauds does not apply to settlement agreements. Our courts have said that such agreements need not even be in writing to be enforceable. *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 445 (Ky. 1997) ("It has long been the law of this Commonwealth that the fact that a compromise agreement is verbal and not yet reduced to writing does not make it any less binding.").

(Footnote omitted.) Because this matter concerns a settlement agreement, the statute of frauds would not apply regardless of when it could be performed.

And finally, while we again need to reach this issue, we find no merit in the Appellants' argument that Dr. Roberts is not entitled to an equitable remedy as to the application of the statute of frauds. Rather, we agree with the circuit court's conclusion:

> Here [the defendants] acknowledged that they had a completed agreement, and that [they] needed to pay [Dr. Roberts], in numerous messages to plaintiff – until [Dr. Hansen's] circumstances changed and he could no longer afford to make the agreed-upon payment and then refused to sign and claimed that they had not reached a final agreement. Plaintiff acted in justifiable reliance upon the contract by ceasing to act as an owner of the business and defendant[s] also acted as if plaintiff were no longer an owner, not consulting him on decisions or paying him any distributions. Equity is on the side of plaintiff and defendants should be estopped from claiming the contract is invalid merely because of [Dr. Hansen's] subsequent unilateral decision that it was no longer a good deal for him and his refusal to sign it.

---

[3] This unpublished case is cited as persuasive authority pursuant to Kentucky Rules of Appellate Procedure (RAP) 41.

For the foregoing reasons, the judgment of the Kenton Circuit Court is affirmed.

ALL CONCUR.


BRIEFS FOR APPELLANTS:

Aaron M. Herzig
Chad R. Ziepfel
Kenneth A. Foisy
Covington, Kentucky

BRIEF FOR APPELLEE:

Alice A. Jones
Cincinnati, Ohio