Reuben J. WRIGHT, et al., Appellants

v.

Kim CARROLL, Appellee.

No. 2013–SC–000528–DG.

Supreme Court of Kentucky.

Oct. 23, 2014.

Rehearing Denied Feb. 19, 2015.

Elizabeth Anna Deener, John Gary McNeill, Carson Wood Smith, Lexington, KY, Counsel for Appellants.

William Horton Wilhoit, Grayson, KY, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

## I. BACKGROUND

Appellant Reuben Wright was driving a tractor-trailer, owned by Appellant Matthew Keeton Trucking, in the southbound lane of a two-lane road when he approached a blind curve that is closely followed by an intersection. On Wright's side of the road, there was a road sign located in the curve warning of the upcoming intersection. Wright drove this route regularly and was aware of the intersection. Nevertheless, Wright testified that

he did not expect any vehicles to be stopped at the intersection when he entered the curve.

However, as Wright rounded the curve, he saw multiple vehicles stopped in his lane waiting to turn left. Wright slammed on his brakes and steered to the right into a ditch to avoid rear-ending the stopped vehicles. His brakes locked, leaving one-hundred feet of skid marks. Although Wright successfully avoided colliding with the vehicles stopped in the southbound lane, his trailer swung into the northbound lane, where it struck Appellee Kim Carroll's vehicle. Carroll sustained serious injuries to her legs from the collision. It is undisputed that Carroll was not operating her vehicle negligently when the collision occurred.

Carroll filed suit in Elliott Circuit Court against Wright and Matthew Keeton Trucking[1] alleging that negligent maintenance and operation of the tractor-trailer proximately caused the accident and the resultant injuries. Two jury trials eventually ensued from the personal injury action. In the first trial, the jury was instructed on the "sudden emergency" doctrine and returned a verdict in favor of Wright. On appeal, the Court of Appeals held that the sudden emergency doctrine was inapplicable because the vehicles properly stopped to turn at the intersection did not constitute an "emergency" that Wright could not have anticipated. *Carroll v. Wright,* 2009 WL 414064 (Ky.App.2009) (*"Carroll I"*). As a result, it reversed and remanded the case back to the circuit court for retrial.

On remand, Wright argued that the accident was created by an "unforeseen circumstance" and that he did the best he could to avoid causing an accident. The

1. We hereafter refer to Appellants collectively as "Wright."

second jury was not instructed on the sudden emergency doctrine, and, contrary to the first trial, it was also not instructed that Wright had a duty to stay in the right lane. The jury again returned a verdict in favor of Wright. Carroll appealed and the Court of Appeals held that the trial court should have granted her motion for directed verdict in the second trial and ordered the case to be retried only on the issue of damages. *Carroll v. Wright,* 2012–CA–000787–MR, 2013 WL 1365941 (Ky.App. 2013) (*"Carroll II"*).

Wright filed a motion for discretionary review, which this Court granted. He argues that the Court of Appeals erred by (1) violating the law-of-the-case doctrine, (2) applying an improper standard of review and misstating material facts, and (3) misconstruing KRS 189.300(1). We affirm the Court of Appeals for the following reasons.

## II. ANALYSIS

### A. Law-of-the-case Doctrine

Wright argues on appeal that the Court of Appeals' *Carroll II* opinion violated the law-of-the-case doctrine because it is contrary to its *Carroll I* opinion. We disagree.

The law-of-the-case doctrine involves a handful of related rules, but the general principle is that a court addressing later phases of a lawsuit should not reopen questions decided by that court or by a higher court during earlier phases of the litigation. *Brown v. Commonwealth,* 313 S.W.3d 577, 610 (Ky.2010). Where multiple appeals occur in the course of litigation, the law-of-the-case doctrine provides that issues decided in earlier appeals should not be revisited in subsequent ones when the evidence is substantially the same. *Id.* (citing *Inman v. Inman,* 648 S.W.2d 847 (Ky.1982)). This rule serves

the important interest litigants have in finality by guarding against the endless reopening of already-decided questions. *Id.* It also serves the equally important interest courts have in judicial economy by preventing the drain on judicial resources that would result if previous decisions were routinely subject to reconsideration. *Id.* Nevertheless, the law-of-the case doctrine is prudential in nature and serves to direct a court's discretion, not limit its power. *Id.* As such, an appellate court may deviate from the doctrine if its previous decision was "clearly erroneous and would work a manifest injustice." *Id.* (citing *Arizona v. California,* 460 U.S. 605, 618, n. 8, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)).

In *Carroll I,* the Court of Appeals held that it was improper for the jury to be instructed on the sudden emergency doctrine. However, the court added, "[o]n the other hand, Carroll was not entitled to a directed verdict. The trial court correctly ruled that the issue of whether Wright had been negligent in failing to slow down before the curve, or whether he was driving too fast in the first place, was a question for the jury." *Carroll v. Wright,* 2009 WL 414064, at *9 (Ky.App.2009). Wright bases his entire law-of-the-case argument on these two sentences from the Court of Appeals' nine-page opinion, which predominately and undisputedly focused on the applicability of the sudden emergency doctrine. He contends that because of those two sentences, it was improper for the Court of Appeals to hold that a directed verdict should have been granted in favor of Carroll in the second trial.

Although not entirely clear from the record, we will assume that the Court of Appeals was presented with the issue of whether a directed verdict should have been granted in *Carroll I.*[2] The Court of

---

**2.** In *Carroll I,* the court stated that the *"sole* issue on appeal [was] whether the trial court

Appeals unequivocally and elaborately determined that the jury could not be instructed on the sudden emergency doctrine. In contrast, it failed to similarly elaborate on why Carroll was not entitled to a directed verdict. The court merely held that, in the first trial, questions about Wright's speed of travel were properly submitted to the jury.

Our case law has made clear that the sufficiency of evidence in a second trial can affect the appropriateness of a directed verdict without violating the law-of-the-case doctrine. In *Lake v. Smith*, 467 S.W.2d 118 (Ky.1971), our predecessor Court held that it did not violate the law-of-the-case doctrine when after the first trial, the appellate court held that there was a question of fact for the jury, and then, after a second trial, held that a directed verdict should have been granted. We stated:

> The 'law of the case' rule requires that we make comparison of the evidence at the two trials to determine if the substance and probative effect of that at the second trial was equal or superior to that of the first. The rule does not prohibit us from determining whether the evidence on the second trial authorized submission to the jury.

*Id.* at 119; *see also Louisville & N.R. Co. v. Gregory*, 289 Ky. 211, 158 S.W.2d 1, 5 (1941) ("Facts in issue which are not proven with sufficient definiteness to sustain a verdict may be developed [in] another trial so as to produce a different legal result.").

After reviewing the record of both trials, we agree with the Court of Appeals that evidence in the second trial was considerably stronger than the evidence in the first trial. In the first trial, Wright primarily testified about the maintenance of the trac-tor-trailer, particularly about the vehicle's braking system. Comparatively, in the second trial there was very little testimony about the maintenance of the tractor-trailer. Instead, Wright testified a great deal about his operation of the tractor-trailer leading up to and during the accident. Wright acknowledged that he had a duty to maintain control of the tractor-trailer and operate it in a safe manner. He agreed that a driver must sometimes drive below the speed limit in order to operate a vehicle safely if certain conditions are present. He also admitted that he lost control of the trailer and that it slid into the northbound lane causing the collision with Carroll's vehicle, and he agreed that there was nothing Carroll could have done to prevent the accident.

Further, we reject Wright's argument that *Inman v. Inman* demands that the Court of Appeals was bound by its *Carroll I* determination regarding a directed verdict in *Carroll II*. 648 S.W.2d 847 (Ky. 1982). *Inman* did not involve a directed verdict determination, nor was there a question about the sufficiency of evidence. Rather, the case involved a dissolution of marriage, in which the Court of Appeals determined in the first appeal that a professional degree obtained by a husband during the marriage was marital property. *Id.* at 848. However, after the case was remanded and appealed a second time, the Court of Appeals held that the professional degree was not marital property. *Id.* This Court held that the second determination was improper because the appellate court was bound by the law-of-the-case doctrine regarding its characterization of the professional degree as marital property. *Id.* at 849.

erred in allowing the jury to be instructed on the 'sudden emergency' doctrine." *Carroll v. Wright*, 2009 WL 414064 (Ky.App.2009) (emphasis added). Thus, there is a strong argument that two sentences regarding directed verdict in *Carroll I* are merely dicta.

In contrast to the present case, no evidence changed regarding the professional degree. It was uncontroverted in both trials that the parties had been married at the time the husband obtained the degree and that the wife had worked to support the couple while the husband was in professional school. *Id.* at 848. Moreover, in the second trial, the trial court did not even consider, and the parties did not litigate, whether the professional degree was marital property. *Id.* at 849. Therefore, in *Inman,* the Court of Appeals had made a completely opposite determination without any justification.

Those are clearly not the circumstances in the case at bar. As such, this case is far more similar to *Lake,* and it was not only proper for the Court of Appeals to make a comparison of the sufficiency of the evidence with regard to the directed verdict, it was necessary. *See Lake* at 119. Because the testimony was significantly different in the second trial, the law-of-the-case doctrine did not preclude the Court of Appeals from determining whether a directed verdict should have been granted after the second trial. Thus, the Court of Appeals did not err in this regard.

**B. Standard of Review and Material Facts for Directed Verdict**

 After holding that the law-of-the-case doctrine did not preclude the Court of Appeals' decision in *Carroll II,* we must determine whether it was proper for the court to hold that a directed verdict should have been granted for Carroll during the second trial. Since the trial court denied Carroll's motion for a directed verdict, the Court of Appeals was limited to reviewing that decision for clear error:

> When engaging in appellate review of a ruling on a motion for directed verdict, the reviewing court must ascribe to the evidence all reasonable inferences and deductions which support the claim of the prevailing party. Once the issue is squarely presented to the trial judge, who heard and considered the evidence, a reviewing court cannot substitute its judgment for that of the trial judge unless the trial judge is clearly erroneous. In reviewing the sufficiency of evidence, the appellate court must respect the opinion of the trial judge who heard the evidence. A reviewing court is rarely in as good a position as the trial judge who presided over the initial trial to decide whether a jury can properly consider the evidence presented. Generally, a trial judge cannot enter a directed verdict unless there is a complete absence of proof on a material issue or if no disputed issues of fact exist upon which reasonable minds could differ. Where there is conflicting evidence, it is the responsibility of the jury to determine and resolve such conflicts, as well as matters affecting the credibility of witnesses. The reviewing court, upon completion of a consideration of the evidence, must determine whether the jury verdict was flagrantly against the evidence so as to indicate that it was reached as a result of passion or prejudice. If it was not, the jury verdict should be upheld.

*Bierman v. Klapheke,* 967 S.W.2d 16, 18–19 (Ky.1998) (internal citations omitted). Although this is a strict standard of review, the Court of Appeals correctly noted and applied it. Likewise, the court did not misstate the material facts. Thus, the Court of Appeals did not err in holding that the trial court should have granted Carroll's motion for a directed verdict at the second trial.

 "The fact that a motorist is on the wrong side of the road at the time of collision with an automobile traveling in the opposite direction constitutes prima facie proof of negligence on his part, and

we have often so held. To avoid liability in that kind of situation, such driver must show that his negligence did not put him there." *Mulberry v. Howard,* 457 S.W.2d 827, 829 (Ky.1970) (citing *Gross v. Barrett,* 350 S.W.2d 457 (Ky.1961); *Myers v. Walker,* 322 S.W.2d 109 (Ky.1959); *Stark's Adm'x v. Herndon's Adm'r,* 292 Ky. 469, 166 S.W.2d 828 (1942)); *see also Webb Transfer Lines, Inc. v. Taylor,* 439 S.W.2d 88, 95 (Ky.1968) ("The rule is that when a collision occurs on the defendant's left side of the road, there is a prima facie case of negligence. The obligation to go forward and to explain the reason for being on the wrong side of the road passes to the defendant."). A defendant driver cannot satisfy this burden by claiming his presence on the wrong side of the road was the result of an emergency situation that was created by his own negligence. *Rabold v. Gonyer,* 285 Ky. 618, 148 S.W.2d 728, 731 (1941). Moreover, a court should have "no hesitancy" in granting a directed verdict for a plaintiff when a defendant driver causes a collision on the wrong side of the road without justification. *Davis v. Kunkle,* 302 Ky. 258, 194 S.W.2d 513, 514 (1946).

Perhaps the Court of Appeals summarized it best in *Paducah Area Public Library v. Terry:*

> We find no error in directing a verdict on the question of liability. When a vehicle is struck in its own traffic lane, the vehicle in the wrong or improper lane is presumptively at fault. There are situations where one's presence in the wrong lane can be excused as a matter of law but they are rare, indeed. There are also situations where one's negligence in being in the wrong lane may be weighed by the jury under a "sudden emergency" instruction, but this succor to a defendant does not exist where his presence in the wrong lane is brought about by his own negligence, or where the situation causing his depar-

ture from the correct lane could reasonably have been anticipated.

655 S.W.2d 19, 22 (Ky.App.1983). Therefore, in this case, we must begin with a presumption of negligence because Wright's trailer was in the opposite lane of traffic. Wright has the burden of proving that the departure from his lane was caused by neither his own negligence nor his failure to perceive a situation that could have been reasonably anticipated. *Id.; Mulberry* at 827.

Wright places great emphasis on his maneuvering to avoid the vehicles stopped in his lane. He insists that a catastrophic collision would have occurred if he had not steered his truck into the ditch, and thus he acted as prudently as possible after seeing the stopped vehicles. He also stresses the testimony of his expert, Dr. Fred Semke, who opined that it would have been impossible for Wright to see Carroll's vehicle while performing the evasive maneuver. However, Wright's focus is misplaced because no one suggests that the maneuver in itself was negligent. Rather, Wright's negligence is alleged to have occurred before the evasive maneuver began when he failed to anticipate vehicles stopped at the intersection.

Wright does not dispute that he had a duty to keep a lookout and operate his vehicle in a careful manner. He routinely traveled the road, he knew that an intersection followed the blind curve, and he even knew that there was a road sign that warned of the intersection. The presence of stopped vehicles waiting to turn was a normal traffic condition that Wright could have reasonably anticipated. Yet, he failed to do so, and as a result, he had no choice but to maneuver his tractor-trailer so as to avoid rear-ending the stopped vehicles. Furthermore, although Wright argues in his brief that he remained in

control of his vehicle, he admitted in the second trial that he lost control of the trailer and that the trailer was part of his vehicle. However, this point is immaterial because whether he remained in control or not, the trailer ended up in the opposite lane of traffic and collided with Carroll's vehicle. Additionally, although Wright was not speeding, he admitted in the second trial that he could have approached the curve at a slower speed and that certain driving conditions call for driving below the speed limit in order to operate a vehicle carefully. Therefore, it is clear from the evidence that Wright did not comply with his duties to keep a lookout and operate his vehicle carefully.

No matter how Wright posits his defense, whether as an "emergency situation," an "unforeseen circumstance," or an "unavoidable accident," he has not overcome the presumption of negligence because he should have anticipated that traffic could be stopped at the intersection. *See Harris v. Thompson*, 497 S.W.2d 422, 428 (Ky.1973) (discussing sudden emergency and unavoidable accident defenses).

While all reasonable inferences must be made for Wright, there is no need to make any inferences because the material facts are undisputed and the Court of Appeals did not err in its statement of them.

 The only excuse Wright has provided for his failure to anticipate the legally stopped vehicles in his lane is that he had never encountered vehicles stopped at that intersection before. This is not sufficient to justify his negligence. As such, the jury verdict after the second trial was "flagrantly against the evidence" and must have been the "result of passion or prejudice."[3] *Bierman* at 19. Thus, the Court of Appeals did not err in holding that the trial court should have directed verdict in Carroll's favor.

### C. KRS 189.300(1)

In *Carroll II*, the Court of Appeals cited KRS 189.300(1)[4] to support the proposition that Wright had a specific statutory duty to travel on the right side of the highway. Wright contends that the court misconstrued the statute and effectively imposed upon him a strict liability duty to

**3.** In the second trial, the jury was not instructed on the presumption of negligence or that Wright had any duty to drive on the right side of the highway. In fact, the trial court ordered that Carroll could not present evidence or make arguments to the jury that Wright had a duty to drive on the right side of the road. The trial judge issued a twelve-page order after the second trial, justifying why she made these rulings. The order suggests that she felt the need to exclude the duty to drive on the right side of the road from the instructions to offset the fact that a sudden emergency instruction could not be included. The entire premise of the sudden emergency doctrine is that there are certain emergency situations that can alter a driver's duties. *Regenstreif v. Phelps*, 142 S.W.3d 1, 4–5 (Ky. 2004). In *Carroll I*, the Court of Appeals held that the facts of the present case did not present a situation where the sudden emergency instruction was appropriate. Thus, the trial court effectively modified Wright's duties

despite the *Carroll I* decision. In consideration of all of these things, it is clear that Carroll was prejudiced in a way that likely affected the jury verdict.

**4.** KRS 189.300(1) provides:

The operator of any vehicle when upon a highway shall travel upon the right side of the highway whenever possible, and unless the left side of the highway is clear of all other traffic or obstructions for a sufficient distance ahead to permit the overtaking and passing of another vehicle to be completed without interfering with the operation of any vehicle approaching from the opposite direction or any vehicle being overtaken. The overtaking vehicle shall return to the proper traffic lane as soon as practicable and, if the passing vehicle enters the oncoming traffic lane, before coming within two hundred (200) feet of any approaching vehicle.

drive in the right lane no matter the circumstances. He further asserts that the statute only applies to situations where a driver is attempting to pass another vehicle in the left lane of the highway. However, these arguments are immaterial because as discussed above, there was enough evidence to grant a directed verdict for Carroll based on the common law general duty to drive in the right lane. Thus, while a specific statutory violation by Wright could have strengthened Carroll's case for a directed verdict, it was not essential to it. *See Henson v. Klein,* 319 S.W.3d 413, 421 (Ky.2010) (discussing that it is possible but rare in modern society for a negligence claim to be based solely on a breach of a general duty of care). Therefore, it is not necessary for us to consider whether the Court of Appeals correctly applied the statute in the instant case.

### III. CONCLUSION

The law-of-the-case doctrine did not preclude the Court of Appeals' *Carroll II* decision because the evidence in the two trials was substantially different. Moreover, because the evidence in the second trial was uncontroverted that Wright failed to anticipate or look out for vehicles stopped at the intersection without sufficient justification, the Court of Appeals did not err in holding that a directed verdict should have been granted in Carroll's favor at the second trial, nor did it misstate material facts in its opinion. Accordingly, the Court of Appeals' opinion is affirmed, and we remand to the Elliott Circuit Court for retrial on the issue of damages.

All sitting. All concur.