RENDERED: SEPTEMBER 24, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0742-MR

LOWE'S FEED AND GRAIN, INC.                                        APPELLANT

v.            APPEAL FROM WARREN CIRCUIT COURT
              HONORABLE JOHN R. GRISE, JUDGE
              ACTION NO. 07-CI-01581

CHARLES "RICK" MAXWELL,
INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY AS CITY
ELECTRICAL INSPECTOR FOR THE
CITY OF BOWLING GREEN,
KENTUCKY                                                          APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, COMBS, AND MAZE, JUDGES.

COMBS, JUDGE: Lowe's Feed and Grain, Inc., appeals from a judgment of the

Warren Circuit Court entered on April 8, 2020, following a second remand that

was ordered by this Court. The judgment was entered in favor of Charles "Rick"

Maxwell, an employee of the City of Bowling Green. As noted, this was our

second remand in this action, and we directed the circuit court to revisit its analysis

of whether Maxwell had acted in good faith with respect to his duties as an

electrical inspector and, in turn, whether he was entitled to qualified official

immunity related to the claim for negligent misrepresentation asserted against him

by Lowe's Feed. On appeal, Lowe's Feed contends that this issue was resolved

squarely against Maxwell by the unanimous verdict rendered by the jury in June

2012 and that the trial court exceeded its authority by adjudging that Maxwell was

entitled to official immunity. After our review, we affirm the judgment.

This matter has been the subject **of two** prior appeals assigned to

separate panels of this Court and to two remands to the Warren Circuit Court. This

is the third appeal, and it follows the decision of the trial court following the

second remand. For the sake of efficiency, we rely upon the synopsis of the factual

background and procedural history provided in our initial opinion as follows:

> [T]his dispute began with the loss of electrical power to
> Lowe's Feed. On September 27, 2002, an 800 amp
> breaker in the mill building of Lowe's Feed
> malfunctioned during a storm leaving the building
> without power. Don Lowe of Lowe's Feed contacted an
> electrical contractor, Patterson Westbrook, to perform the
> needed electrical repairs to the mill building. Westbrook,
> in turn, contacted Maxwell, an electrical inspector for the
> City. Westbrook and Maxwell arrived at Lowe's Feed on
> the afternoon of September 27, 2002. Maxwell
> concluded that the building was unsafe due to numerous
> electrical code violations and ordered the electricity to be
> disconnected and/or not restored to the mill building until

the electrical system was in compliance with current electrical code standards.

The subsequent facts of this case are vigorously disputed by the parties. However, it is clear that City Attorney Eugene Harmon mailed a letter dated October 30, 2002, to the attorney for Lowe's Feed, David Broderick. In that letter, Harmon informed Broderick that the City was proceeding to condemn the mill building for various violations of the International Property Maintenance Code (IPMC), unless immediate repairs were made. Under a permit obtained from the City in January 2003 by Frank Tabor of Brothers Electric on behalf of Lowe's Feed, electrical repairs were made to the mill building during 2003 and early 2004. These electrical repairs were inspected by Maxwell and approved in February 2004. Electricity was restored to the mill building at that time.

On September 27, 2007, Lowe's Feed filed a complaint in Warren Circuit Court against Maxwell, in his individual capacity and in his official capacity, and against the City. Lowe's Feed asserted that Maxwell improperly terminated electricity to the mill building on September 27, 2002, and then engaged in a conspiracy with the City to wrongfully deny the mill building electricity until February 12, 2004. Specifically, Lowe's Feed asserted, *inter alia*, the claims of fraudulent misrepresentation and negligent misrepresentation against Maxwell and the City.

Maxwell and the City filed an answer and eventually filed a motion for summary judgment. Kentucky Rules of Civil Procedure (CR) 56. Therein, they argued that the City was entitled to statutory immunity under the Claims Against Local Government Act and that Maxwell was entitled to qualified official immunity. By partial summary judgment entered January 6, 2012, the circuit court concluded that neither the City nor Maxwell was entitled to immunity upon the

-3-

claim of fraudulent misrepresentation.  As to the claim of negligent misrepresentation, the circuit court determined that the City and Maxwell were entitled to immunity for the discretionary acts of "inspecting and cutting off power at the mill" but were not entitled to immunity for the ministerial acts of "alleged failure to communicate promptly and efficiently."  Additionally, the circuit court held that [Kentucky Revised Statutes] KRS 65.2002 barred recovery of punitive damages against the City.

The remaining claims were eventually tried by a jury in the Warren Circuit Court in June 2012.  The jury found in favor of Maxwell upon the claim of fraudulent misrepresentation.  However, the jury returned a verdict in favor of Lowe's Feed upon its claim of negligent misrepresentation against Maxwell and the City.  The jury also found in favor of Lowe's Feed upon the claim of fraudulent misrepresentation by the City.  As for compensatory damages, the jury awarded Lowe's Feed the sum of $850,000 jointly against the City and Maxwell and also awarded Lowe's Feed punitive damages of $120,000 against Maxwell.

*City of Bowling Green, Kentucky v. Lowe's Feed and Grain, Inc.*, No. 2012-CA-001899-MR, 2014 WL 6882925, at *1-2 (Ky. App. Dec. 5, 2014) (footnotes omitted).  The City and Maxwell appealed.

In the initial appeal, we considered whether the City was immune from suit and whether Maxwell was entitled to assert qualified official immunity against the claims of fraudulent and negligent misrepresentation.  We concluded that the City's actions amounted to quasi-judicial acts and, consequently, that it was entitled to immunity.

-4-

With respect to Maxwell, we considered whether he was entitled to qualified official immunity for communications connected to his duties as the City's electrical inspector. We concluded that Maxwell's *decisions* concerning the alleged code violations and his *communications* regarding those alleged violations were inextricably intertwined and that his communications concerning the electrical, building, and maintenance issues at Lowe's Feed constituted discretionary acts.

We then considered whether Maxwell had acted in good faith and within the scope of his authority. We determined that the evidence presented at trial indicated that he had been working within the scope of his authority. However, we could not determine from this evidence whether he had been acting in good faith. After discussing the applicable law established in *Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001), including the objective and subjective components of the good-faith analysis, we held as follows:

> As the issue of subjective good faith is often fact specific, the circuit court is in the best position to determine whether Maxwell acted in good faith:
>
> > "[S]ubjective intent or good faith, is a factual question that so rarely can be decided by summary judgment . . . and may entail broad-ranging discovery and the deposing of numerous persons, including an official's professional colleagues, and normally requires a trial to resolve[.]" 201 S.W.3d at 474 (brackets omitted). Because

-5-

> whether an officer or employee acted in good faith is a question of fact, we remand to afford the circuit court an opportunity to receive evidence on this issue. *See* [*Rowan Cty. v.*] *Sloas*, 201 S.W.3d [469, 474 (Ky. 2006)].

*Coleman v. Smith*, 405 S.W.3d 487, 495 (Ky. App. 2012).

*City of Bowling Green*, 2014 WL 6882925, at *5. We remanded for the circuit court to determine specifically whether Maxwell had acted in good faith with respect to his communications with Lowe's Feed concerning electrical, building, and maintenance issues at the business. If it was determined that he had acted in good faith, then he would be entitled to assert his qualified official immunity.

In responding to our first remand, the circuit court established a briefing schedule for the parties to argue their respective positions. In its brief, Lowe's Feed argued that the court's decision should be based upon the evidence introduced at trial. Recounting the relevant trial testimony, Lowe's Feed argued that:

> Maxwell's actions in withholding accurate information about repairs needed for his approval for electricity for [Lowe's Feed] for seventeen months were so arbitrary, egregious and reckless as to constitute intentional and malicious bad faith intent to cause injury to [Lowe's Feed] as a matter of law[.]

Lowe's Feed contended that Maxwell abused his authority as an electrical inspector as well as the code enforcement process; that his actions were

-6-

intentional; and that he knew or should have known that his actions violated the rights of Lowe's Feed and caused it hardship.

In his brief, Maxwell argued that under the objective component of the good-faith test, there was no evidence of record to support a finding by the court that his actions violated Lowe's Feed's constitutional, statutory, or other clearly established rights. Maxwell also disputed several factual assertions that Lowe's Feed made in its brief. As to the subjective component, Maxwell contended that Lowe's Feed had presented no evidence to show that he willfully or maliciously intended to harm the business or that he acted with a corrupt motive.

Following a hearing, the trial court entered judgment in favor of Lowe's Feed on November 16, 2016. It acknowledged that:

> [a]lthough this determination should be made by the trier of fact, such as the jury, both parties have assured this Court that it can decide the issue on the evidence presented at the original trial. In other words, both parties have waived their right to a jury trial on the issues now before the Court on remand.

Reviewing the evidence presented at trial, the court found that "Maxwell's decision not to inform Lowe's promptly of which violations occurred, or how to fix them, was willful and unfair to Lowe's, in a due process sense[,]" and that "Maxwell, as the *de facto* arbiter of which consumers receive electrical power, has a duty to give those he adjudicates to be unsafe a meaningful opportunity to understand and correct the problem, and he may not consciously delay the process,

-7-

especially *after* the power is shut off." The court concluded that "Maxwell is not entitled to qualified official immunity because he knew, or reasonably should have known, that his actions as electrical inspector in willfully delaying the process by which Lowe's could regain electrical power was a violation of Lowe's constitutional due process rights[.]" The court reinstated the $850,000.00 verdict for negligent misrepresentation and granted judgment in favor of Lowe's Feed for that amount, plus costs and interest. Maxwell appealed; Lowe's Feed cross-appealed.

In the second appeal, Maxwell argued that the circuit court erred by concluding that he had violated the right of Lowe's Feed to due process. Consequently, he claimed that he was entitled to rely on the protections afforded by official immunity. In a separate argument, Maxwell contended that the evidence did not support the jury's negligent misrepresentation verdict. Lowe's Feed responded by arguing that Maxwell was not entitled to appellate review of the trial court's resolution of the immunity issue and that questions related to the sufficiency of the evidence had been settled in the first appeal. In its cross-appeal, Lowe's Feed sought an amendment of the 2016 judgment on remand to reflect that the 2012 judgment remained in effect, meaning that it should bear interest from the original date of entry.

Upon our review, we held that Maxwell was entitled to seek review of the circuit court's legal ruling that he had acted in bad faith. We also emphasized that we had not reached the sufficiency-of-the-evidence issue in the first appeal. Instead, we had reversed the judgment based on the threshold issue of whether Maxwell was entitled to qualified official immunity. Consequently, we concluded that Maxwell was entitled to a review of the sufficiency of the evidence to support the jury's finding of negligent misrepresentation.

Addressing Maxwell's arguments on appeal, we considered first whether the circuit court erred by concluding, as a matter of law, that Maxwell acted in bad faith and that he was therefore not entitled to qualified official immunity. We reiterated that qualified official immunity "affords protection from damages liability for good faith judgment calls made in a legally uncertain environment" and that it

> applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority.

*Yanero*, 65 S.W.3d at 522 (citations omitted).

We observed that bad faith could be "predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded a

-9-

person in the plaintiff's position, i.e., objective unreasonableness." *Bryant v. Pulaski Cty. Detention Ctr.*, 330 S.W.3d 461, 466 (Ky. 2011).  Acting in the face of such knowledge makes the action *objectively unreasonable*.

In the alternative, we noted that bad faith could be predicated on whether the public employee "willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive" -- making the action *subjectively unreasonable*.  *Sloas*, 201 S.W.3d at 475.  Finally, we reiterated that whether an individual is entitled to the protection of qualified official immunity is a question of law, which we review *de novo*.  *Id*.

Our review of the circuit court's judgment on remand indicated that its analysis was based on the objective prong of the bad-faith test.  It determined that Maxwell had knowingly violated the constitutional right of Lowe's Feed to due process by willfully delaying the ability of Lowe's Feed to regain its electrical power.  However, we noted that Lowe's Feed highlighted evidence relevant to the subjective prong.  Lowe's Feed argued that Maxwell's actions in withholding information "were so arbitrary, egregious and reckless as to constitute intentional and malicious bad faith intent to cause injury to [Lowe's Feed] as a matter of law."

In an opinion rendered in May 2018, we determined that the circuit court erred by concluding that Maxwell violated the due process right asserted by Lowe's Feed.  We noted that neither Lowe's Feed nor the circuit court pointed to

any authority protecting any interest (in the sense of due process) in continued electrical service when a safety hazard or threat to the public exists -- as was the case here. The circuit court concluded that Maxwell's bad faith was predicated on his failure to notify Lowe's Feed in writing within one or two days of the specific code violations; to describe the defective conditions and necessary repairs; and to inform it of the appeal process. These omissions all fall under the objective bad faith analysis as they address whether Maxwell violated Lowe's Feed's constitutional due process rights. However, neither the circuit court nor Lowe's Feed cited to any provision of the applicable electrical code or any other authority to support the specific duty imposed by the circuit court. While acknowledging any customer's need for timely and accurate notification procedures, we concluded that those duties mandated by the circuit court must arise from an identifiable source. As none had been identified in this case, we could not affirm the decision of the circuit court.

Because the circuit court had not made a determination with regard to subjective bad faith, there was nothing more for us to review with respect to the threshold issue of whether Maxwell was immune from suit. Accordingly, we vacated the circuit court's final order and judgment. We remanded for a second time directing the trial court to consider the issue of Maxwell's subjective good faith. We advised that if there were any material issues of fact, the matter should

properly be decided by a finder of fact. We did not reach Maxwell's argument that the negligent misrepresentation verdict was not supported by substantial evidence. The cross-appeal of Lowe's Feed was rendered moot.

Upon remand, the circuit court again established a briefing schedule for the parties to argue their positions. In an initial brief, Lowe's Feed argued again that the circuit court must complete the analysis that we ordered based upon the record made at trial. Maxwell agreed that the issue of whether there was subjective evidence indicating that he had acted in bad faith could be decided by the trial court based on the record without the presentation of new evidence.

In an extensive substantive brief filed later, Lowe's Feed again recounted the trial testimony. It highlighted Maxwell's "spiteful" and "cocky" statements and argued that these statements were part of a "deliberate scheme of malicious deceit and were intentional, oppressive actions" intended to cause harm to Lowe's Feed. It contended that evidence of Maxwell's actions showed that his interaction with Lowe's Feed was a departure from his normal practice and revealed that he was engaged in a scheme to drive Lowe's Feed out of business. Separately, Lowe's Feed argued that Maxwell's bad faith intention to harm it was implicit in the jury's award of punitive damages in its 2012 verdict.

In his brief, Maxwell reviewed evidence indicating that he advised Lowe's Feed that he would not authorize electrical power to be restored to its mill

until the electrical system had been repaired and brought up to code. It was a full five months later before Lowe's Feed applied for a permit to repair the electrical system. The permit was duly granted. Maxwell highlighted testimony indicating that he met with electrical contractors hired by Lowe's Feed each and every time they needed him. He argued that Lowe's Feed failed to identify affirmative evidence to show that he did not act in good faith. In fact, Maxwell testified that his sole motivation was his concern for the safety of the mill, the individuals working there, and those living in close proximity to it.

Following a hearing, the trial court entered judgment in favor of Maxwell. It acknowledged that the parties had again waived their right to have any issue on remand determined by a jury. It recognized that the court was charged with deciding whether Maxwell had forfeited his immunity by acting willfully or maliciously with an intent to harm Lowe's Feed or by acting with a corrupt motive. Following a thorough review of the evidence, the court determined that although Maxwell had been "inexcusably indifferent, unhelpful, and unclear," evidence of his bad behavior was insufficient to show a malicious intent to harm Lowe's Feed. Instead, the court found that the evidence showed no more than a "reckless indifference to the needs of a business citizen." The court concluded that the evidence produced by Lowe's Feed was insufficient to meet its burden of proof.

Consequently, judgment was entered in favor of Maxwell. The motion of Lowe's Feed to vacate, alter, or amend was denied, and this appeal followed.

On appeal, Lowe's Feed states broadly that the findings and conclusions of the Warren Circuit Court are clearly erroneous or, in the alternative, that the court abused its discretion by acting beyond its authority on remand. Specifically, it argues that the trial court usurped the role of the jury "by interpreting facts, drawing inferences, making conclusions, making determinations of credibility and assigning weight to certain evidence[.]" It argues that the jury's award of punitive damages indicates that it was persuaded by the evidence of Maxwell's fraud, malice, or oppression -- a finding sufficient to support a conclusion that Maxwell acted in bad faith. It contends that the trial court's task on remand was simply to determine whether the evidence supported the jury's award of punitive damages rendered in June 2012. Lastly, concluding that the evidence was sufficient to support the punitive damages award, Lowe's Feed argues that our decision in the first appeal constitutes a palpable error resulting in manifest injustice. Consequently, Lowe's Feed asks this Court to reinstate the judgment rendered in its favor in June 2012 -- including the punitive damages awarded. We disagree with each of these assertions.

The circuit court clearly understood its task on remand. Pursuant to the agreement of the parties to waive further jury involvement, the court carefully

analyzed the evidence presented by Lowe's Feed arguably demonstrating that Maxwell failed to act in good faith. However, the court was not persuaded by this evidence. It was not persuaded that Maxwell acted with a malicious intent to harm Lowe's Feed or that he acted with a corrupt motive. Consequently, it concluded that Maxwell was entitled to assert official immunity. The evidence of record supports the determination made by the court -- that the evidence is insufficient to carry the burden of proof imposed by the law upon Lowe's Feed.

Furthermore, contrary to the assertion of Lowe's Feed, the trial court was not bound to infer from the jury's award of punitive damages that Maxwell had failed to act in good faith and had thereby forfeited his immunity. In its verdict, the jury found in favor of Maxwell with respect to the claim of fraudulent misrepresentation; it found in favor of Lowe's Feed **only** upon the claim of negligent misrepresentation. Having been erroneously instructed, the jury awarded punitive damages based upon Maxwell's negligent misrepresentation.

However, as we noted in the initial appeal, punitive damages are not recoverable on a claim for negligent misrepresentation. Through its verdict, the jury found that Maxwell provided false information. That finding did not preclude the circuit court from determining on remand that Lowe's Feed failed to show that he acted with a malicious intent to harm the business or that he acted with a corrupt motive. After sorting out and reconsidering the material facts, the circuit court

-15-

concluded as a matter of law that Maxwell was protected by qualified official immunity. There was no error.

Lastly, we reject the argument that our decision in the first appeal constitutes a palpable error resulting in a manifest injustice to Lowe's Feed and that reinstatement of the June 2012 judgment -- including punitive damages -- is required or warranted. The law-of-the-case doctrine is applicable here. That doctrine embodies the general principle that a court addressing later phases of a legal action should not reopen questions decided by that court or by a higher court during earlier phases of the litigation. *Wright v. Carroll*, 452 S.W.3d 127 (Ky. 2014). "This rule serves the important interest litigants have in finality by guarding against the endless reopening of already-decided questions." *Id.* at 130. "It also serves the equally important interest courts have in judicial economy by preventing the drain on judicial resources that would result if previous decisions were routinely subject to reconsideration." *Id.* Despite these sound objectives, an appellate court may deviate from the doctrine if its previous decision was "clearly erroneous and would work a manifest injustice." *Id.* (citing *Arizona v. California*, 460 U.S. 605, 618 n.8, 103 S. Ct. 1382, 1391, 75 L. Ed. 2d 318 (1983)). That is plainly not the case here.

Upon the initial appeal, we held that the circuit court erred by denying Maxwell's motion to set aside the jury's punitive damage award because those

damages are not recoverable for a claim of negligent misrepresentation. As the jury found that Maxwell committed only the tort of **negligent** misrepresentation, the punitive damage award could not stand as a matter of law. In support of the well-established rule, we cited the opinion of the court in *Morton v. Bank of the Bluegrass and Trust Company*, 18 S.W.3d 353 (Ky. App. 1999), in which we held that punitive damages could be awarded **only for intentional actions** such as fraud, oppression, or malice.

The Supreme Court of Kentucky denied the motion of Lowe's Feed for discretionary review of our opinion, and it became final on September 23, 2015. Our decision was not clearly erroneous, nor did it work a manifest injustice.

The judgment of the Warren Circuit Court is affirmed.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Charles D. Greenwell
Prospect, Kentucky

BRIEF FOR APPELLEE:

Shawn R. Alcott
Bowling Green, Kentucky