RENDERED: OCTOBER 6, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0081-MR

JAYNE KENDLE                                        APPELLANT

                     APPEAL FROM CHRISTIAN CIRCUIT COURT
v.                    HONORABLE JOHN L. ATKINS, JUDGE
                         ACTION NO. 21-CI-00439

CHAVDA MEDICAL SERVICES,
PLLC; DR. GEETA CHAVDA; DR.
SANJAY GEETA; GEETA S.
CHAVDA, M.D., PLLC; AND THE
BELL CLINIC, PLLC D/B/A BELL
CLINIC                                        APPELLEES

<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE: CETRULO, KAREM, AND McNEILL, JUDGES.

CETRULO, JUDGE: Appellant Jayne Kendle ("Employee") appeals the Christian Circuit Court's November 2022 Order denying Employee's pre-trial motion for summary judgment and its Final Trial Order and Judgment indicating its denial of her motion for directed verdict.

## FACTUAL AND PROCEDURAL HISTORY

In February 2018, Employee, a pediatric nurse practitioner, entered a five-year employment contract with Appellees Dr. Sanjay Chavda ("Dr. Sanjay");[1] Dr. Geeta Chavda ("Dr. Geeta"); and their "practices," including Chavda Medical Services, PLLC; Geeta S. Chavda, M.D., PLLC; and the Bell Clinic, PLLC, d/b/a, Bell Clinic (together, "Employer"). The employment contract was the Employer's standard form and included, in pertinent part, that Employee's salary was set for the five-year period and that she would receive 10 days of vacation time per year.

A year later, Employee informed Employer that she was searching for job opportunities at other clinics. In order to keep Employee, the parties negotiated an "Addendum to Contract Dated 2/14/2018" (the "Addendum"). The Addendum stated that its term ran through April 2023 and provided that Employee's salary would increase five percent per year. Further, it stated Employee's vacation time would "increase a total of 160hrs per year." The Addendum detailed Employee's work schedule – four 10-hour shifts per week unless a clinic opened in Cadiz and they needed her to work 8:00 a.m. to 5:00 p.m., Monday through Friday – and stated that Employer would purchase fluoride varnish, an ASQ Toolkit, visual screener, and hearing screener for Employee's practice.

---

[1] Occasionally, the record (as well as the case caption) refers to Dr. Sanjay Geeta, but he introduced himself as Dr. Sanjay Chavda at trial, so we use Dr. Sanjay Chavda here.

In April 2020, Employee asked the Employer's office administrator, Latisha Edmonds ("Administrator Edmonds"), when Employee's next salary and vacation increases would take place, and Administrator Edmonds told her that the salary increase would begin on her first paycheck after April 24, 2020, but that Employee's vacation time had already increased to 160 hours. However, Employee explained that she had interpreted the Addendum to mean she would receive an additional 160 hours of vacation time every year – *i.e.*, 160 the first year, 320 the second, 480 the third, *etc*. After confirming with Dr. Geeta, Administrator Edmonds informed Employee that her interpretation was incorrect. Employer had intended the vacation time to be set at 160 hours per year, increasing from the initial employment contract's 10-day-provision, not increasing 160 hours every year.

Three months later, in July 2020, Administrator Edmonds sent a note to Employee notifying her that "[d]ue to the need of availability we will be needing your hours to be changed to Monday-Friday 8am-5pm. Starting July 27th, 2020." Administrator Edmonds and Dr. Geeta testified in their depositions that Employee had requested the scheduling change. According to them, Employee had trouble seeing at night and asked to work different hours so she could get home earlier, before it was too dark outside. Therefore, to accommodate Employee's availability, Employer shifted her work schedule.

The record indicated that the new schedule and the fixed 160-hour vacation time remained in place for the next eight months without issue. Then, in March 2021, Employee sent a letter to Dr. Geeta, Dr. Sanjay, and Administrator Edmonds recounting Employee's conversations with Administrator Edmonds in April 2020 and July 2020, detailed above. Additionally, the letter indicated that Employee had been splitting her time between two clinic locations – Bell Clinic and Hopkinsville Clinic – even though the Cadiz clinic, referenced in the Addendum, had not opened. Employee explained that she had contacted an attorney regarding contract enforcement in Kentucky, and the attorney had told her contracts are binding. She then asked "that [Employer] honor the commitments you made to me in my contract addendum including the return to working four-ten hour shifts at Bell Clinic, the annual increases in paid vacation time, and the acquisition of an ASQ toolkit, a hearing screener, and vision screener."

Four days later, Administrator Edmonds responded.[2] The response again explained that Employee was incorrectly interpreting the vacation time provision. Administrator Edmonds stated that such an interpretation – increasing vacation time by an additional 160 hours every year – was unrealistic. As to

---

[2] Although Employee's attorney submitted this response as an exhibit and noted that Employer had provided the response in discovery, Employee testified that she had not received that letter. She testified that the only response she had received was a letter from Dr. Sanjay. The attorneys agreed that both response letters were "very similar." However, Dr. Sanjay's letter stated that Employee did not have enough patient volume to justify purchasing the ASQ toolkit, hearing screener, and vision screener.

Employee's work schedule, Employer had not be able to open the Cadiz Clinic "[d]ue to issues outside [their] control"; however, "[d]ue to the low patient count/not seeing enough patients as per [Employee's] contract and [Employee] hav[ing] requested several times to be closer to home to shorten [] driving distance, we accommodated you to take care [of] patients in our Hopkinsville office, which is closer to your home." The response detailed the clinics' operating hours – 8:00 a.m. to 5:00 p.m. at the Bell Clinic and 9:00 a.m. to 6:00 p.m. at the Hopkinsville Clinic – and concluded that Employee's request to work 10-hour days at the Bell Clinic could not be accommodated by the clinics' hours. Additionally, it stated that working Monday through Friday, 8:00 a.m. to 5:00 p.m., would help build her patient base, per her contract. Finally, it noted that Employee had not provided quotes for the equipment she was requesting.[3]

In April 2021, Employee submitted her letter of resignation and filed suit against Employer, claiming Employer had breached the Addendum. Employee requested a declaratory judgment stating Employer had violated the contract. Employee further claimed her resignation resulted in income loss she would have had during the remainder of the employment contract. Following discovery, in September 2022, Employee filed a motion for summary judgment,

---

[3] Administrator Edmonds, Dr. Geeta, and Dr. Sanjay testified that they had asked Employee to provide specific model numbers and pricing information to ensure they purchased the appropriate items.

arguing that it was undisputed that Employee had a valid employment contract and Addendum and Employer had breached those terms. Specifically, Employee argued that Employer breached the Addendum when it failed "to procure any of the equipment specified in the Addendum[,]" scheduled Employee to work a schedule other than four 10-hour shifts, and did not increase her vacation time by 160 hours every year. The trial court denied Employee's motion in its November 2022 Order, concluding that there were genuine issues of material fact regarding whether Employer breached the employment contract. The case proceeded to a two-day trial in January 2023.

At trial, Employee, Administrator Edmonds, Dr. Geeta, and Dr. Sanjay testified. As to the equipment requested, Employee testified that she received fluoride varnish but not the ASQ toolkit, vision screener, and hearing screener. She explained that she had been in contact with some equipment representatives to find adequate items and had given Dr. Geeta's phone number to them. Employee did not know whether the representatives had contacted Dr. Geeta or provided the requested details on equipment, but she assumed that because the representatives were "bugging" her, they were "bugging" Dr. Geeta as well.

As to the work schedule, Employee testified that she did not request a change in hours per day; that she wanted to remain working four 10-hour days per

week. However, she did testify that she did not express concern about the change in hours until months later, when she wrote the March 2021 letter. As to the increase in vacation time, Employee testified that she interpreted the Addendum to mean she would receive an additional 160 hours every year, not a total of 160 hours. She then walked through all the Addendum items that Employer had provided, including an annual salary increase, the purchase of fluoride varnish, and additional payments toward Employee's health insurance.

Next, Administrator Edmonds testified. Concerning Employee's work schedule, Administrator Edmonds explained that Employee's schedule varied generally, but when the schedule changed to eight-hour days, it was because Employee had expressed difficulty seeing at night, occasionally had her own medical appointments, or did not have patients at the end of the day and wanted to go home. Further, she testified that the clinics were not open 10 hours a day. As to vacation time, Administrator Edmonds testified that Employee had requested that her initial vacation time of 10 days be doubled to 20 days (160 hours), which Employer accommodated. Administrator Edmonds drafted the Addendum and stated that the vacation provision was not meant to increase by 20 days every year.

Likewise, Dr. Geeta testified that Employer tried to accommodate the four 10-hour day schedule, but the clinic was not open 10 hours a day and Employee often wanted to get off by 5:00 p.m. Additionally, Dr. Geeta testified

that she intended to double Employee's vacation time from 10 days to 20 days (160 hours), fixed. There was no intent to increase 20 extra days every year. Regarding the medical equipment, Dr. Geeta testified that she asked Employee to provide details on the equipment, including the specific screeners she wanted, the equipment company from which she wanted to purchase it, and a quote for the items. Employee never provided those details.

Finally, Dr. Sanjay testified. Dr. Sanjay acknowledged that Employer had agreed to buy the equipment in the Addendum; however, Employee had never provided the exact equipment, with prices, that she wanted. Dr. Sanjay confirmed testimony by Dr. Geeta and Administrator Edmonds that Employee resigned on good terms and made no mention of any alleged breaches of the contract and Addendum in her resignation letter. As such, Dr. Sanjay was not aware of any hostility from Employee until he received notice of the complaint.

As for vacation time, Dr. Sanjay testified that he had agreed to give Employee 20 days total, not to increase by 20 every year. He explained that such an interpretation would not be viable because after a few years, Employee could "vacation" all year and still get paid. Despite Dr. Sanjay's letter to Employee stating that Employee did not have enough patient volume to justify the purchases of equipment, he also testified that Employee did not provide specific details and prices of the items she wanted. Dr. Sanjay clarified that, although the Hopkinsville

Clinic was open 8:00 a.m. to 6:00 p.m., which is 10 hours, they do not see patients the entire time, so Employee would not be able to work a full 10-hour shift there. The Bell Clinic is open only nine hours.

At the conclusion of testimony, Employee moved for a directed verdict, arguing that the evidence showed the parties had entered into an employment contract, then Addendum, and that the Employer failed to comply with the terms. Employer emphasized that there were genuine questions of fact and "we need to let the jury do its job." The trial court agreed with the Employer and denied the motion for directed verdict. The jury then returned a unanimous verdict in favor of Employer, resulting in the Final Trial Order and Judgment.

## STANDARD OF REVIEW

When this Court reviews a trial court's ruling on a motion for directed verdict, we "must ascribe to the evidence all reasonable inferences and deductions which support the claim of the prevailing party." *Morris v. Boerste*, 641 S.W.3d 688, 698 (Ky. App. 2022) (quoting *Wright v. Carroll*, 452 S.W.3d 127, 132 (Ky. 2014)). This Court "cannot substitute its judgment for that of the trial judge unless the trial judge is clearly erroneous." *Id.* (quoting *Wright*, 452 S.W.3d at 132).

Typically, a trial court

cannot enter a directed verdict unless there is a complete absence of proof on a material issue or if no disputed issues of fact exist upon which reasonable minds could differ. Where there is conflicting evidence, it is the

responsibility of the jury to determine and resolve such conflicts, as well as matters affecting the credibility of witnesses.

*Id.* (quoting *Wright*, 452 S.W.3d at 132).

Then, this Court must determine "whether the jury verdict was flagrantly against the evidence so as to indicate that it was reached as a result of passion or prejudice. If it was not, the jury verdict should be upheld." *Id.* (quoting *Wright*, 452 S.W.3d at 132).

## ANALYSIS

Employee argues that the trial court erred when it denied her pre-trial motion for summary judgment and her motion for directed verdict at the conclusion of trial. Employee claims the evidence showed that Employer chose not to comply with the Addendum; therefore, the trial court should have granted her motions. Specifically, Employee takes issue with the Addendum's provision of 160 hours vacation time per year, her workweek split into four 10-hour days, and the acquisition of certain pieces of medical equipment.[4]

---

[4] Additionally, the parties discuss contract formation- and modification-specific issues, *e.g.*, Employer argues that Employee's inaction when her schedule changed showed that she "assented to a revision in her contract[,]" citing *Kincaid v Johnson, True & Guarnieri, LLP*, 538 S.W.3d 901, 911 (Ky. App. 2017). While that may be true, on appeal from a denial of directed verdict, this Court's scope of review is confined to whether the trial court clearly erred when it denied the motion and submitted the issues to the jury. Therefore, our review is limited to whether there was proof that a disputed issue of fact existed such that submission to the jury was proper. *See Morris*, 641 S.W.3d at 698 (quoting *Wright*, 452 S.W.3d at 132).

## A.     Order Denying Motion for Summary Judgment

First, Employee claims that the trial court erred when it denied her motion for summary judgment because there were no genuine issues of material fact.  However, Employer contends that the denial of Employee's motion for summary judgment is not properly before this Court.  We agree.  The Kentucky Supreme Court has explained that pursuant to *Gumm v. Combs*, 302 S.W.2d 616 (Ky. 1957), "[a]n order denying a motion for summary judgment is not *appealable.* Nor is such a denial *reviewable* on an appeal from a final order or judgment where the question considered is whether or not there exists a genuine issue of a material fact." *Auslander Properties, LLC v. Nalley*, 558 S.W.3d 457, 462 (Ky. 2018) (quoting *Gumm*, 302 S.W.2d at 616-17).  There, the Kentucky Supreme Court noted that

> [T]here is an exception to the general rule found in [*Gumm*] and subsequently approved in *Loy v. Whitney*[, 339 S.W.2d 164 (Ky. 1960)] and *Beatty v. Root*[, 415 S.W.2d 384 (Ky. 1967)].  The exception applies where: (1) the facts are not in dispute, (2) the only basis of the ruling is a matter of law, (3) there is a denial of the motion, and (4) there is an entry of a final judgment with an appeal therefrom.  Then, and only then, is the motion for summary judgment properly reviewable on appeal under *Gumm.*

*Id.* (quoting *Trans. Cabinet, Bureau of Highways v. Leneave*, 751 S.W.2d 36, 37 (Ky. App. 1988)).

This case does not meet the requisite elements. Immediately, it fails: the facts surrounding the change in work schedule, the purchase of medical equipment, and the increase in vacation time were all in genuine dispute. Employer argued that Employee requested the change in her work schedule so she could get home earlier in the day, before it was too dark; however, Employee claims she did not make such request and that Employer unilaterally mandated the change. Further, Employer argued it agreed to purchase the equipment for Employee, but was waiting to get detailed information and quotes from Employee; however, Employee testified that she put the equipment representatives in contact with Dr. Geeta to provide such information. Finally, Employer argued it agreed to double Employee's vacation time just once, but Employee believed she should receive 160 additional hours of vacation time every year. As the exception to the rule does not apply, the trial court's denial of Employee's motion for summary judgment is not reviewable.

### B.    Order Denying Motion for Directed Verdict

Next, Employee argues that the trial court erred when it denied her motion for directed verdict because "the trial evidence demonstrated that the [Employer] violated the Addendum[.]" As discussed, "a trial court should only grant a directed verdict when 'there is a complete absence of proof on a material issue or if no disputed issues of fact exist upon which reasonable minds could

differ.'" *Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 285 (Ky. 2014), *as corrected* (Apr. 7, 2015) (citation omitted). Above, we explained that there were disputed issues of fact; therefore, the only question left is whether Employer presented proof on the issues.

It is Employee's contention that the proof introduced by Employer – that the written contract had been modified by subsequent oral agreements – was not sufficient to take the case to the jury, in light of the rule that such evidence must be clear and convincing. Thus, Employee asserts she was entitled to a directed verdict in her favor. The generally recognized rule is that a contract in writing may be modified by a subsequent parol agreement. *McKinney v. Flanery*, 205 Ky. 766, 266 S.W. 629, 631 (1924); *Hicks v. Oak's Adm'r*, 233 Ky. 27, 24 S.W.2d 917, 921 (1930). "Clear and convincing," in such circumstances, "does not mean that the oral contract should be established beyond a reasonable doubt." *Glass v. Bryant*, 302 Ky. 236, 194 S.W.2d 390, 393 (1946). Instead, "[i]t means that the evidence in support of the oral agreement is not vague, ambiguous or contradictory, and comes from a credible source. Proof that is clear and convincing . . . does not lose its character merely because it is disputed or contradicted by evidence introduced by the opposing party." *Id.*

Employee emphasizes that Employer did not present any documents noting her alleged "request" to modify the Addendum because Employee never

made such request. However, Administrator Edmonds and Dr. Geeta both testified that Employee regularly asked to get home earlier, before it was too dark, and stated that she wanted to be off by 5:00 p.m., but explained that they did not write down every request from their employees. Further, Employee corroborated that when her work schedule changed, she worked the new schedule without objection for months before sending her letter asking to go back to four 10-hour days.

Similarly, as to vacation time, Employee argues that Employer "refused to follow the language of the Addendum by providing an increase of 160 hours of vacation during each year of the Addendum[.]" Employee disagrees that her interpretation of the language was incorrect and points to Dr. Sanjay's testimony that the vacation term was "not viable." However, Administrator Edmonds, Dr. Geeta, and Dr. Sanjay all testified that they intended to double Employee's vacation time from 10 days in the original employment contract to 20 days (160 hours) total. Further, Dr. Sanjay testified that increasing the vacation time indefinitely would result in Employee eventually having a full year's worth of vacation time, which would not have made sense.

Regarding the purchase of equipment, Employee argues that Dr. Sanjay had testified that Employer did not make the purchases because "he found it unnecessary and not financially viable[,]" which is not an appropriate reason to "breach" a contract. While Dr. Sanjay did testify that he did not believe the

-14-

equipment was necessary, based on Employee's low patient numbers, he acknowledged that regardless of his belief, he had agreed to buy it. Dr. Sanjay then explained that the reason he did not buy it was because Employee had failed to provide the specific information and quote for the equipment.

While Employee presented evidence that Employer may have breached the Addendum, Employer clearly presented clear and convincing opposing proof.[5] There was no "complete absence of proof on a material issue[.]" *Bierman v. Klapheke*, 967 S.W.2d 16, 18 (Ky. 1998). The Kentucky Supreme Court has noted that "[w]here there is conflicting evidence, it is the responsibility of the jury to determine and resolve such conflicts, as well as matters affecting the credibility of witnesses." *Id.* at 19 (citation omitted). As such, the trial court did not err when it denied Employee's motion for directed verdict.

Finally, this Court "must determine whether the verdict rendered [was] palpably or flagrantly against the evidence so as to indicate that it was reached as the result of passion or prejudice." *Id.* at 18 (citing *NCAA v. Hornung*, 754 S.W.2d 855 (Ky. 1988)). If the verdict was not, it should be upheld. *Id.* (citation omitted). Here, after weighing the evidence discussed and the credibility of the witnesses, the jury unanimously agreed with Employer's version of events.

---

[5] Again, clear and convincing proof "does not lose its character merely because it is disputed or contradicted by evidence introduced by the opposing party." *Glass*, 194 S.W.2d at 393.

Taking Employer's evidence as true, as required by *Hornung*, there is no indication that the jury's verdict was the result of passion or prejudice. *Id.* at 19. *See also Morris*, 641 S.W.3d at 698. Therefore, the verdict must be upheld.

## CONCLUSION

The trial court did not err when it denied Employee's motion for directed verdict. As such, we AFFIRM the Final Trial Order and Judgment.

ALL CONCUR.

BRIEFS FOR APPELLANT:

D. Wes Sullenger
Paducah, Kentucky

BRIEF FOR APPELLEES:

J. Michael Foster
Hopkinsville, Kentucky